## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MAXWELL J. KIMPSON, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 1:06-cv-00018 (RWR) |
| FANNIE MAE, | : | |
| Defendant. | : | |
|  | : | |

## FANNIE MAE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT, OR, IN THE ALTERNATIVE, STAY PROCEEDINGS PENDING ARBITRATION

Pursuant to LCvR 7, Defendant Fannie Mae[1], by and through undersigned counsel, submit this Memorandum of Points and Authorities in Support of its Motion To Compel Arbitration And Dismiss The Complaint, Or, In The Alternative, Stay Proceedings Pending Arbitration ("Motion to Compel").  The Motion to Compel is brought pursuant Fed.R.Civ.P. 12(b)(1) and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2, 3 & 4, on the grounds that the Complaint in this matter alleges controversies arising out of and relating to contracts and transactions involving and affecting interstate commerce,[2] that Plaintiff agreed to settle those controversies in arbitration through a written agreement,[3] and that all issues raised in the

---

[1] Plaintiff's designation of "Fannie Mae Corporation" as the defendant is incorrect.  Fannie Mae's legal name is "Fannie Mae."  It was formerly known as the Federal National Mortgage Association.  Fannie Mae presumes it is the proper defendant in this action because Fannie Mae employed Plaintiff Maxwell J. Kimpson to work as a full-time regular employee from on or about August 28, 2000, to April 5, 2005.

[2] Under the FAA, the enforcement of arbitration agreements is "'within the full reach of the Commerce Clause.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (quoting *Perry v. Thomas*, 482 U.S. 483, 490 (1987)).

[3] Section 2 of the FAA provides that "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. §2.

Complaint are "referable to arbitration." Plaintiff agreed to arbitrate all such claims as a condition precedent to filing a court action, pursuant to and consistent with Fannie Mae's dispute resolution policy; thus, he is compelled to do so for the reasons set forth more fully below. Fannie Mae seeks entry of the attached order dismiss his Complaint and compelling Plaintiff to arbitrate his claims pursuant to the FAA. In the alternative, Fannie Mae requests that this Court stay all proceedings pending arbitration.[4]

In support of this Motion to Compel, Fannie Mae hereby submits this Memorandum of Points and Authorities, and the Declaration of Alan Tanenbaum. Fannie Mae will also rely on Plaintiff's Complaint and any oral argument that the Court may allow. As required by LCvR 7(m), on March 1, 2006, undersigned counsel from Holland & Knight contacted J. Michael Hannon, counsel for Plaintiff. In the course of that telephone conversation with Mr. Hannon, undersigned counsel from Holland & Knight asked whether Plaintiff would consent to a Motion to Compel Arbitration. Mr. Hannon indicated that he would not consent to relief sought by this Motion to Compel.

## INTRODUCTION

### 1.    The Parties

Fannie Mae is a private, federally-chartered, shareholder-owned corporation, with its principal place of business in the District of Columbia. Fannie Mae is deemed to be a District of Columbia corporation for the purposes of jurisdiction and venue in civil actions. *See* 12 U.S.C. §1717(a)(2)(B). Fannie Mae employed Plaintiff – on an at-will basis – to work as a full-time regular employee from on or about August 28, 2000, to April 5, 2005. Complaint ¶¶ 9 and 79.

---

[4] Section 3 of the FAA provides "upon being satisfied that the issue . . . is referable to arbitration," the Court, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. §3.

2

**2.      Fannie Mae's Arbitration Policy**

On March 16, 1998, Fannie Mae issued its "Dispute Resolution Policy" (the "Policy"),

which, by specific reference, is to be interpreted, enforced, and governed by the FAA.[5] *See*

Exhibit A to the Declaration of Alan Tanenbaum (hereinafter "Tanenbaum Decl.")(attached

hereto as Exhibit 1).  On the same day that Fannie Mae issued the Policy, it expressly became a

condition of employment for all Fannie Mae employees, and Fannie Mae agreed to be bound by

its terms.  The Policy states its binding effect on both Fannie Mae and its employees in bold print

on the first page:

> **The effective date of the Policy is March 16, 1998.  On that date, the
> Policy becomes a condition of employment for all Fannie Mae
> employees.  This means that, by starting or continuing to work for
> Fannie Mae on or after that date, each employee is indicating that he
> or she accepts the Policy as a condition of employment and agrees to
> be bound by it.  Fannie Mae also promises to be bound by the Policy.**

(Policy at 1.)

The Policy requires employees to submit their employment-related claims to non-binding

arbitration before a mutually selected independent arbitrator[6] as a condition precedent to filing a

lawsuit regarding those same claims.[7]  As pertinent here, Section 2 of the Policy identifies the

employment-related claims that employees must arbitrate:

> *all claims* . . . involving a legally-protected right, *that directly or indirectly
> relate to his or her employment* . . . .  These include claims involving
> rights protected by any federal, state, or other governmental constitution,
> statute, ordinance, regulation, or common law.  (Emphasis added).

---

[5]  Sections 15 and 16 of the Policy.

[6]  Section 4 of the Policy designates JAMS/ENDISPUTE (now known as and hereinafter referred to as "JAMS") as
the administrator of any arbitration brought under the Policy, specifically noting JAMS' status as an independent
and neutral national arbitration service.  Section 7 of the Policy requires that the employee and Fannie Mae
"mutually select one arbitrator from among the qualified arbitrator candidates identified by JAMS."

[7]  Section 1 of the Policy, titled "Arbitration as Prerequisite to Lawsuit," states "If an employee has a claim that is
covered under Section 2 of this [Policy], he or she must arbitrate the claim under this Policy before bringing suit on
it in court."  (Footnote omitted.)

In exchange for Fannie Mae employees' agreement to arbitrate their employment claims before bringing suit in court, *in addition to continued employment*, Fannie Mae provides numerous other benefits to the employees.  For example, Fannie Mae pays all arbitration filing, case management, administrative fees charged by JAMS, and the fees of the Arbitrator.[8]  The Policy further specifically provides that there will be:  (1) no interference with the employee's right to file a charge or complaint with any administrative body; (2) no interference with the applicable statute of limitations of an employee's claims; (3) a reasonable and fair amount of discovery; and (5) a written award stating the disposition, relief (if any), and statement of reasons supporting the disposition and relief.[9]

Of particular note is the ***non-binding*** effect of the Arbitration for the employee.  Once an employee complies with his or her agreement to arbitrate and the arbitrator issues the award, the employee retains the right – for 30 days following its issuance – to accept or reject the award.[10]  If an employee rejects an award for any reason, or no reason whatsoever, the employee is free to file a lawsuit on his or her claims.  *Id.*  In sharp contrast, Fannie Mae is bound by the arbitrator's decision, having retained no such privilege or right for itself to reject the arbitrator's award, no matter what the outcome.  *Id.*

3.     **Plaintiff Agreed to Arbitrate His Claims Against Fannie Mae.**

When Plaintiff applied for a full-time position with Fannie Mae, he completed and signed an employment application (dated June 26, 2000), which, on the last page above his signature included, among other things, the following language:

---

[8]  Section 11 of the Policy.

[9]  Sections 3, 6, 10, and 13 of the Policy.

[10]  Section 14 of the Policy.

> I acknowledge that, as a condition of employment, all Fannie Mae employees must agree to be bound by Fannie Mae's Dispute Resolution Policy, which requires that certain employment-related claims be submitted to arbitration before a suit can be brought on them in court. A copy of the Dispute Resolution Policy will be provided at such time, if any, that an offer of employment is made: an advance copy may be obtained on request made to Fannie Mae's Staffing Department, (202)752-7000.

A copy of Plaintiff's employment application is attached hereto as Exhibit 2. On June 28, 2000, Fannie Mae sent Plaintiff an offer of employment. Exhibit 3. With the offer, it is Fannie Mae's practice to send out a number of documents related to the employment relationship with Fannie Mae, including the Policy and a document titled "Questions and Answers Pertaining to Fannie Mae's Dispute Resolution Policy Effective March 16, 1998" (the "Questions and Answers Document"). Tanenbaum Decl. ¶ 6. The Questions and Answers Document alerts employees that if they failed to arbitrate their claims prior to bringing a lawsuit, Fannie Mae would ask the court to order arbitration under the Policy. Tanenbaum Decl. at Exhibit B, p. 4.

Plaintiff accepted Fannie Mae's offer of employment on July 5, 2000, with a start date of August 28, 2000. Exhibit 3; Complaint ¶ 9. During the five years of his employment, Plaintiff had access to Fannie Mae's intranet, where information about the Policy, including the Policy and the Questions and Answers Document, were continually posted. Tanenbaum Decl. ¶ 5. By applying for and accepting employment with Fannie Mae, Plaintiff agreed to be bound by Fannie Mae's policies and procedures, including its Dispute Resolution Policy.

In late December 2005, in-house counsel for Fannie Mae learned of Plaintiff's intention to file a lawsuit and promptly contacted his counsel to inform them that Mr. Kimpson was obligated under Fannie Mae's Dispute Resolution Policy to submit his claims to arbitration as a condition precedent to filing a lawsuit. Exhibit 4, December 23, 2005, letter from Madonna A. McGwin, Esq., to J. Michael Hannon, Esq., and Sean G. Ryan, Esq. (with email coversheet).

Ms. McGwin included with her letter (sent by email and regular mail), the standard Fannie Mae

employee arbitration package, which included: a form Demand; a memorandum about

arbitration at Fannie Mae; the Policy; JAMS rules; and the Questions and Answers Document.

*Id.* [11]

Contrary to his agreement to arbitrate, on January 6, 2006, Plaintiff filed in this Court a

one-count complaint against Fannie Mae alleging wrongful termination of his employment in

violation of the Sarbanes-Oxley Act of 2002. As demonstrated *infra*, Plaintiff's claim is of the

type required to be arbitrated under Section 2 of the Policy. For the reasons set forth below and

given the Policy's unambiguous language stating that the parties agree that claims related to his

employment must be submitted to arbitration, this Court must compel Plaintiff to arbitrate his

claims.

## LEGAL ARGUMENT

### 1.    Federal Public Policy Strongly Favors Arbitration

Without question, federal law favors and encourages arbitration. *See Mitsubishi Motors*

*Corp v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614,625 (1985); *Gilmer v. Interstate/Johnson*

*Land Corp.*, 500 U.S. 20, 25 (1991); *Volt Info. Sciences, Inc. v. Board of Trustees of Leland*

*Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). The FAA codifies a strong federal policy of

enforcing arbitration agreements, including agreements to arbitrate statutory rights. *See* 9 U.S.C.

§ 1 *et seq.* The purpose of the enactment of the FAA, in fact, was to provide statutory

acceptance of arbitration agreements, so as to give them the stature of other types of contracts .

*Shearson/American Express v. McMahon*, 482 U.S. 220, 226 (1987); *Moses H. Cone Memorial*

---

[11] When providing the name for service of process to Plaintiff's counsel, Ms. McGwin again reminded them of Plaintiff's obligation to submit to arbitration, and again attached the arbitration package. This email, without its attachments, was attached as made Exhibit B to Plaintiff's Motion for Entry of Default Judgment (Docket Entry No. 3).

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (FAA "establishes as a matter of federal law" that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration). When directing parties to proceed to arbitration on such issues, by its terms, the FAA "leaves no place for the exercise of discretion by a district court." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *Moses H. Cone Memorial Hosp., supra* at 24-25 ("Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.")

**2.    The Federal Arbitration Act Applies to the Policy and Compels Judicial Enforcement of the Policy.**

Section 16 of the Policy explicitly states that the Policy is "an agreement to arbitrate pursuant to the FAA," and that it will, "in all respects, be interpreted, enforced, and governed under the FAA." The parties agreed to the application of the FAA, and therefore, in deciding Fannie Mae's Motion to Compel Arbitration, this Court must interpret the Policy in the favorable light of the FAA. Moreover, it is well-settled that employment arbitration agreements are enforceable under the FAA. *See Circuit City Stores, Inc., v. Adams*, 532 U.S. 105, 122-123 (2001). The Supreme Court's decision in *Circuit City* confirmed that "the FAA compels judicial enforcement of a wide range of written arbitration agreements" and that Court has been "clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context." 532 U.S. at 111, 122-23; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) (unequal bargaining power between employers and employees does not make arbitration agreement unenforceable).

The Supreme Court has held that mandatory predispute arbitration agreements in the employment context are enforceable under the FAA, even where statutory rights are at issue. In

fact, the Supreme Court "has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law." *Circuit City*, 532 U.S. at 123, *referring to Gilmer*, 500 U.S. at 35 (absent Congressional intent to preclude, statutory claims can be made subject to arbitration) and *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) (the FAA provides no basis for disfavoring agreements to arbitrate statutory claims).

The FAA provides that any arbitration agreement within its scope "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 4. Under the FAA, a party "aggrieved by the alleged . . . refusal of another to arbitrate" may petition any federal district court for an order compelling arbitration in the manner provided for in the agreement. *Id.* Although repeatedly reminded of his obligation by Fannie Mae, Plaintiff has refused to arbitrate his claims as required by the Policy.[12] Through this Motion to Compel Arbitration, Fannie Mae has informed this Court of the arbitration agreement which binds Plaintiff (the Policy) and which constitutes an unfulfilled prerequisite for Plaintiff to proceed before this Court.

Under the FAA, the role of this Court in resolving a Motion to Compel Arbitration is limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. 9 U.S.C. § 4. Once this Court determines that both a valid agreement exists and the dispute is covered by the agreement, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms.

---

[12] See Exhibits 2 and 3.

3.      **A Valid Arbitration Agreement Exists Between Plaintiff and Fannie Mae.**

Plaintiff's acceptance of employment with Fannie Mae provided the requisite consideration to bind Plaintiff to the terms of the Policy.[13]  By continuing as a Fannie Mae employee for over five years, Plaintiff cannot now avoid his obligations under the Policy.  *See Sisco v. GSA Nat'l Capital Fed. Credit Union,* 689 A.2d 52, 56 (D.C. 1997) (remaining with employer after receipt of employee handbook stating terms of employment supplies the necessary consideration to make the promises in the handbook enforceable).

4.      **Plaintiff Agreed To Have The Arbitrator Decide The Arbitrability Of His Claim.**

Even if Plaintiff argues that his claim is not arbitrable under the Policy, Fannie Mae and Plaintiff have already agreed that "[t]he arbitrator will resolve all disputes over the interpretation and applicability of the Policy, *and over the arbitrability of all matters presented under it.*" (Section 16 of the Policy)(emphasis added).  Although arbitrability questions are usually for the court to decide, such questions must instead be resolved by the arbitrator where the parties "clearly and unmistakably" agree to have the arbitrator decide issues of arbitrability.  *Howsam v. Dean Witter Reynolds, Inc.* 537 U.S. 79, 83 (2002) ("the *question of arbitrability*, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise" (internal quotation marks omitted; brackets in *Howsam*)).  In light of the Policy's "clear and unmistakable" language, to the extent Plaintiff questions the arbitrability of his claim, the arbitrator, and not this Court, must decide whether Plaintiff's claim falls within the scope of the

---

[13]  Plaintiff's decision to take the offer from Fannie Mae, subject to the various conditions of employment imposed by Fannie Mae – even if he argues there was inequality in the bargaining power – is sufficient consideration to bind him to arbitration.  "[M]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer, supra,* 500 U.S. 20, 33 (Supreme Court intended to invalidate arbitration agreements only when the circumstances were "more egregious than the ordinary economic pressure faced by every employee who needs a job.")

Policy. Thus, this Court need not (and should not) make an independent determination of whether the Policy encompasses Plaintiff's claim before compelling arbitration.

Although the question of arbitrability is not to be decided by this Court, there can be no question that Plaintiff's wrongful discharge claim under Sarbanes-Oxley directly relates to the termination of his employment with Fannie Mae. Policy at 2. The fact that his claim arises under the Sarbanes-Oxley Act is irrelevant. "There is nothing in the text of the statute or the legislative history of the Sarbanes-Oxley act evincing intent to preempt arbitration of claims under the act[; n]or is there an inherent conflict between arbitration and the statute's purposes." *Boss v. Salomon Smith Barney Inc.*, 263 F.Supp.2d 684, 685 (S.D.N.Y. 2003) (holding that Sarbanes-Oxley claims were subject to the arbitration policy contained in the employee handbook).

If there could be any doubt as to this point, such doubt must be resolved in favor of arbitration:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate a particular grievance *should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.* Doubts should be resolved in favor of coverage.

*AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (emphasis added; internal quotation marks omitted); *see also Moses H. Cone Memorial Hosp., supra* at 24-25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

**5.      This Court Should Compel Plaintiff to Arbitrate His Claim Before Proceeding in this Action.**

Under the FAA, the enforcement of arbitration agreements is "'within the full reach of the Commerce Clause.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, (2003) (quoting *Perry v.*

*Thomas*, 482 U.S. 483, 490 (1987)).  The FAA has created an explicit remedy for situations

where, as here, a party files a judicial action in violation of an enforceable arbitration agreement:

> If any suit or proceeding be brought in any of the courts of the United
> States upon any issue referable to arbitration under an agreement in
> writing for such arbitration, the court in which the suit is pending, upon
> being satisfied that the issue involved in such suit or proceeding is
> referable to arbitration under such an agreement, shall on application of
> one of the parties stay the trial of the action until such arbitration has been
> had in accordance with the terms of the agreement, providing the applicant
> for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  The party seeking arbitration pursuant to the agreement may also request an order

compelling the breaching party to arbitrate:

> A party aggrieved by the alleged failure, neglect, or refusal of another to
> arbitrate under a written agreement for arbitration may petition any United
> States district court which, save for such agreement, would have
> jurisdiction under Title 28 . . . for an order directing that such arbitration
> proceed in the manner provided for in such agreement. . . . The court shall
> hear the parties, and upon being satisfied that the making of the agreement
> for arbitration or the failure to comply therewith is not in issue, the court
> shall make an order directing the parties to proceed to arbitration in
> accordance with the terms of the agreement.

9 U.S.C. § 4.  Because Plaintiff's claim falls under the Policy, this Court must dismiss or stay

this action and compel arbitration.

**6.    The Court Should Dismiss The Action Or, Alternatively, Stay Further Proceedings
Pending The Outcome Of The Arbitration.**

This Court should dismiss Plaintiff's Complaint because Plaintiff's only claim – wrongful

termination – must be arbitrated.  *See Emeronye v. CACI Intern., Inc.*, 141 F.Supp.2d 82, 88

(D.D.C. 2001)("[B]ecause all of plaintiff's claims are subject to arbitration, dismissal of this

action is within the discretion of the Court and is appropriate."); *Nelson v. Insignia/Esg, Inc.*, 215

F.Supp.2d 143, 158 (D.D.C.2002)(dismissing rather than staying case where all claims were

arbitrable "in accordance with what other courts have done when all of the plaintiff's claims

11

must be submitted to arbitration") *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3rd 707, 709-10 (4th Cir.2001)(under Section 3 of the FAA "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable").  Given that Plaintiff must satisfy the condition precedent of arbitration prior to filing suit, the case should be dismissed.

In the alternative, if this Court chooses not to dismiss the Complaint, a stay of the proceedings is mandated by the FAA pursuant to 9 U.S.C. § 3 (upon application of a party, a court "*shall*" stay further proceedings in a legal action if it finds that "any issue" in the case should be referred to arbitration under an agreement in writing for such arbitration).  Even when not mandated by the FAA, a stay of further proceedings is appropriate when "considerations of judicial economy and avoidance of confusion and possible inconsistent results . . . militate in favor of staying the entire action." *American Home Assurance Co. v. Vecco Concrete Constr. Co.,* 629 F.2d 961, 964 (4th Cir. 1980).

## CONCLUSION

Plaintiff contractually agreed to the terms of the Policy, and is therefore required to arbitrate any dispute that may arise from his employment with Fannie Mae. Because the claim asserted in this action does in fact arise from his employment with Fannie Mae (and the termination of that employment), Fannie Mae respectfully submits that this Court should, pursuant to Sections 2, 3, and 4 of the FAA (9 U.S.C. §§ 2, 3, & 4), either dismiss or stay this action, and issue an order compelling Plaintiff to submit his claim to arbitration.

Wherefore, Fannie Mae respectfully requests this Court grant its Motion to Compel Arbitration and enter the attached Order dismissing Plaintiff's Complaint.

Dated:  March 3, 2006                         Respectfully submitted,

                                              By:  _____/s/_ Philip T. Evans_____
                                                   Philip T. Evans (D.C. Bar No. 441735)
                                                   HOLLAND & KNIGHT LLP
                                                   2099 Pennsylvania Ave., N.W., Suite 100
                                                   Washington, D.C.  20006
                                                   Tel: (202) 955-3000/Fax: (202) 955-5564

                                                   *Counsel for Fannie Mae*

**Of Counsel:**
Madonna A. McGwin
Associate General Counsel
Fannie Mae
3900 Wisconsin Avenue, N.W.
Washington, D.C.  20016-2892

# 3626797_v1

13