# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAXWELL J. KIMPSON, <br><br> Plaintiff, <br><br> v. <br><br> FANNIE MAE, <br><br> Defendant. | Case No. 1:06-cv-00018 (RWR) |

## DECLARATION OF ALAN TANENBAUM

1. My name is Alan Tanenbaum. I am over the age of twenty-one (21), suffer no legal or mental disabilities, and am fully competent to make this Declaration. I have personal knowledge of the facts contained in this Declaration.

2. I have been employed with Fannie Mae since March 1996. Since approximately 1997, I have been a Director in Fannie Mae's Office of Corporate Justice. Since 2001, I have been the Director responsible for managing Fannie Mae's Office of Corporate Justice, initially as Associate General Counsel and, since approximately 2002, as Deputy General Counsel. I submit this Declaration in support of Fannie Mae's Motion to Compel Arbitration.

3. Fannie Mae's Dispute Resolution Policy (the "Policy"), attached hereto as Exhibit A, became effective on March 16, 1998. As the Policy states, beginning on that date, by starting or continuing to work for Fannie Mae, the Policy became a condition of employment for all Fannie Mae employees.

4. A document titled "Questions and Answers Pertaining to Fannie Mae's Dispute Resolution Policy Effective March 16, 1998" (the "Questions and Answers Document"), attached hereto as Exhibit B, was developed by Fannie Mae to be issued with the Policy.

5. Information about Fannie Mae's Dispute Resolution Policy, including without limitation, an electronic copy of the Policy itself, pertinent JAMS Rules, and the Questions and Answers Document, is posted on Fannie Mae's intranet (internally referred to as "HomeSite"), and has been so posted since at least July 12, 1999. "HomeSite" is an internal electronic network accessible by all Fannie Mae employees from their computers.

6. Since the effective date of the Policy, Fannie Mae has required that offer letters to applicants be accompanied by, among other things, copies of both the Policy and the Questions and Answers Document.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 2nd day of March, 2006.

*/s/ Alan Tanenbaum*
Alan Tanenbaum

2

# Exhibit A

# DISPUTE RESOLUTION POLICY

In any work environment, job-related disputes occasionally arise. At Fannie Mae, these are usually resolved through the Company's open door policy or the efforts of the Office of Corporate Justice ("OCJ"), which addresses disputes using a variety of alternative dispute resolution tools, including counseling, facilitated negotiation, mediation, and investigation/decision. With the introduction of this Dispute Resolution Policy ("Policy"), certain job-related claims must go through arbitration by a neutral independent arbitrator before a suit can be brought on them in court.

Arbitration is a process in which a claim is presented to a neutral person (an arbitrator) instead of to a judge or jury in court. The arbitrator makes a decision on the claim after both sides present their evidence and arguments at an arbitration hearing. The hearing is much less formal than a court trial.

**The effective date of the Policy is March 16, 1998. On that date, the Policy becomes a condition of employment for all Fannie Mae employees. This means that, by starting or continuing work for Fannie Mae on or after that date, each employee is indicating that he or she accepts the Policy as a condition of employment and agrees to be bound by it. Fannie Mae also promises to be bound by the Policy.**

1. <u>Arbitration as Prerequisite to Lawsuit.</u>

    If an employee[1] has a claim that is covered under Section 2 of this Policy, he or she must arbitrate the claim under this Policy before bringing suit on it in court.

2. <u>Claims Covered by the Policy.</u>

    The Policy applies to all claims that an employee might make against Fannie Mae (and its directors, officers, agents, or employees, in their representative capacities) involving a legally-protected right, that directly or indirectly relate to his or her employment or the termination of that employment, even if the claim is based on facts or circumstances that occurred before the effective date of the Policy. These include claims involving rights protected by any federal, state, or other governmental constitution, statute, ordinance, regulation, or common law. For example, claims asserting rights protected by the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Americans with Disabilities Act, 42 U.S.C. § 1981, or the Family and Medical Leave Act would be covered by the Policy.

---

[1] As used in the Policy, the word "employee" includes current or former Fannie Mae regular, term, and temporary employees (including paid interns). Independent contractors and third-party contract employees are not covered by the Policy.

The Policy does not apply to any claim that is filed in court or with the EEOC or any other administrative or fair employment rights agency before the effective date of the Policy. The Policy also does not apply to any claim made in connection with workers' compensation benefits, unemployment compensation benefits, or under any of Fannie Mae's employee welfare benefit, ERISA, or pension plans, or to any claim of unfair competition, disclosure of trade secrets, or breach of trust or fiduciary duty.

The Company may assert that the employee's claim is barred because it does not involve a legally-protected right, and the arbitrator may be requested to rule on this issue as a preliminary matter before conducting a hearing on the substance of the employee's claim.

3. Right to Pursue Administrative Complaints.

The Policy does not change or in any way affect an employee's right to file a charge or complaint with the EEOC or any other administrative or fair employment rights agency. During an employee's participation or involvement in any of Fannie Mae's dispute resolution processes (including arbitration under the Policy), there will be no suspension, extension, or postponement of any applicable time limit or deadline by which the employee is required to file such an administrative charge or complaint. The Policy does not bar or restrict any employee, at any time, from assisting or cooperating with any such agency's investigations or proceedings. However, if an employee has an administrative charge or complaint pending while arbitrating it under the Policy, Fannie Mae will ask the agency to suspend its proceedings while the matter is arbitrated. Regardless of whether the agency agrees to suspend its proceedings, arbitration under the Policy will proceed.

4. Election of Arbitration.

If the OCJ has not resolved, to the employee's satisfaction, an employee's complaint involving a legally-protected right, the employee may initiate arbitration by sending a completed "Demand for Arbitration" form (which may be obtained from the OCJ) to J·A·M·S/ENDISPUTE ("J·A·M·S") and a copy to the OCJ. J·A·M·S is the independent and neutral national arbitration service that will administer all arbitrations under the Policy. If an employee submits a "Demand for Arbitration" form to J·A·M·S before the OCJ has investigated the claim, the OCJ may conduct an internal investigation while the arbitration is proceeding, and the employee will have a continuing obligation to cooperate fully and candidly with the OCJ investigator. At any time before the arbitration hearing is held, the parties may agree to submit the complaint to mediation.

5. Rules and Procedures.

Arbitration will be conducted under the rules and procedures contained in the Policy, supplemented by JAMS's Arbitration Rules and Procedures for Employment Disputes ("JAMS's rules"). In the event of a conflict between JAMS's rules and those contained in the Policy, the Policy will prevail.

6. Time Limit on Submission of Claims.

In order for an employee's claim to be eligible for arbitration, JAMS must receive the employee's completed "Demand for Arbitration" form within the time limit set by law for bringing suit on that claim in court. If the Company contends that the claim was not made within the time limit, the arbitrator may be requested to decide the issue before any hearing on the substance of the claim. If JAMS receives the "Demand for Arbitration" form within the time limit for bringing suit in court, but that time limit runs out during the arbitration, the Company will agree to extend the time limit for up to 60 calendar days after the date of the arbitration decision, so that the employee has an opportunity to bring a timely suit on the claim in court, if he or she rejects the decision as provided in this Policy.

7. Arbitrator Selection and Replacement.

For each arbitration under the Policy, the employee and the Company will mutually select one arbitrator from among the qualified arbitrator candidates identified by JAMS. Each arbitrator candidate will have the following qualifications:

- attorney or former/retired judge;
- minimum of seven years' experience in legal and/or judicial practice; and
- substantial employment law experience (as determined by JAMS).

After receiving the employee's completed "Demand for Arbitration" form, JAMS will prepare and submit, to the employee and the Company, a list containing five arbitrator candidates who have the qualifications stated above, together with their resumes or biographical summaries. Within seven calendar days after JAMS sends the list of arbitrator candidates, each party must strike up to two names from it, rank the remaining arbitrator candidates in order of preference, and return the list to JAMS. If there is more than one candidate remaining after the parties' strikes, JAMS will appoint as arbitrator the one with the highest total ranking by the parties. If a highest total ranking cannot be determined, then JAMS will designate the arbitrator from among the candidates who have not been stricken. If a party fails to send the list back to JAMS within the seven calendar days, JAMS will assume that the party has accepted all of the arbitrator candidates on the list.

If, for any reason, the arbitrator is unable to fulfill his or her duties, a successor arbitrator will be chosen in this manner.

8. Employee Participation.

Fannie Mae will excuse from their business duties, without loss of pay or benefits, all employees (including the employee who has made the claim) who are needed to provide testimony or attend arbitration proceedings, for such time as they are needed and actively participating.

9. Representation.

The employee may have an attorney or other representative, at his or her sole expense, present during any phase of arbitration.

The Legal Department will arrange for the Company's representation in arbitration. However, the Legal Department may advise a manager to secure his or her own representation if it determines that the manager's interests may be in conflict with the Company's.

10. Exchange of Information.

The employee and Fannie Mae each will be entitled to obtain relevant information from the other prior to the arbitration hearing, through informal exchange and:

- request(s) that the other party produce a reasonable number of relevant documents;
- one request that the other party answer not more than 25 relevant questions, including sub-parts;
- two or fewer "fact" witness depositions; and
- "expert" witness depositions.

11. Fees and Expenses.

Fannie Mae will pay all arbitration filing, case management, and/or administrative fees charged by JAMS, as well as all hourly or daily fees of the arbitrator. In order to preserve the impartiality of the arbitrator, the Company will make all such payments to JAMS, and JAMS will in turn pay the arbitrator's fees.

An employee who chooses to have a lawyer or other representative for the arbitration must pay all of that lawyer's or representative's fees and expenses. In addition, each party must pay all of its own expenses for acquiring or "discovering" information or testimony (e.g., taking an individual's deposition), and the fees and expenses of its "expert" or outside witness(es).

12. <u>The Arbitration Hearing.</u>

Either party may offer as evidence, and the arbitrator may admit into the record or consider, any agreement the parties have reached for resolving any claim(s) being arbitrated, and any findings and remedial actions resulting from a Company investigation into the same or substantially similar facts underlying the claim(s) being arbitrated.

13. <u>The Award.</u>

The arbitrator's decision ("Award") will consist of a written statement of disposition and relief, if any; and a written statement of reasons supporting the disposition and relief, if any. The Award will be based on the facts and the prevailing judicial interpretation of applicable law. The arbitrator may award any remedy or relief to the employee that is consistent with the arbitrator's authority under the law governing the employee's claim, including attorneys' fees and expenses. The Award is admissible as evidence in any litigation or proceeding on any claim arising out of the same facts or circumstances that were raised, presented, or decided in the arbitration.

14. <u>Rejection/Acceptance of the Award.</u>

The employee may, *within 30 calendar days of the date of issuance of the Award*, reject it, in its entirety, by sending a completed "Rejection of Arbitration Award" form to JAMS and the OCJ. If the employee rejects the Award, it will not become binding on the employee or the Company, and the employee may bring suit on the claim at his or her own expense.

If the employee does not reject the Award during the 30-day period, the Award becomes binding on both the Company and the employee, and the employee may not bring suit against Fannie Mae (or its directors, officers, agents, or employees, in their representative capacities) on any claims arising out of the same facts or circumstances that were raised, presented, or decided in the arbitration. If the employee does not reject the Award, he or she may not receive any award resulting from his or her EEOC or other administrative charge, or from any lawsuit brought by the EEOC or other administrative or fair employment rights agency on any claim arising out of the same facts or circumstances that were raised, presented, or decided in the arbitration. If the employee has filed a charge with the EEOC or any other administrative or fair employment rights agency, Fannie Mae will notify the agency that the claim has been resolved through arbitration.

At the expense of the party requesting it, any court having jurisdiction over a binding Award may enter an order giving it the force of law.

15. <u>Enforcement of the Award.</u>

   Proceedings to enforce, confirm, modify or vacate an Award will be subject to the standard of review set forth in the Federal Arbitration Act (FAA).

16. <u>Interpretation and Governing Law.</u>

   The arbitrator will resolve all disputes over the interpretation and applicability of the Policy, and over the arbitrability of all matters presented under it. This Policy is an agreement to arbitrate pursuant to the FAA. The Policy will, in all respects, be interpreted, enforced, and governed under the FAA.

17. <u>Severability/Waiver.</u>

   If any provision of this Policy is held to be legally invalid or unenforceable, it will not affect the remainder of this Policy, which will continue to be in full force and effect. No failure by the Company or the employee to insist on strict compliance with any part of the Policy will be interpreted as a waiver of that part of the Policy.

18. <u>Confidentiality and Privacy.</u>

   The entire arbitration proceeding, including all statements, documents, evidence, and the Award, is confidential and will not be disclosed to anyone other than the parties, their representatives, the JAMS Case Administrator, the Legal Department, and the OCJ, except: (i) to the extent that the parties agree otherwise in writing; (ii) as necessary to respond to a lawful order of a governmental official or agency; (iii) for use in a judicial proceeding to enforce, confirm, modify, or vacate an Award; or (iv) as offered into evidence in any litigation or proceeding on any claim arising out of the same facts or circumstances that were raised, presented, or decided in the arbitration.

19. <u>Employment-At-Will; Discontinuation of Policy.</u>

   Nothing in the Policy, or any of the communications or materials describing or implementing it, changes the employment-at-will relationship between Fannie Mae and its employees. The Company may discontinue the Policy at any time by giving employees 30 calendar days' written notice, but the Policy will continue to apply to all claims submitted for arbitration before or during the notice period.

20. <u>Complete Agreement.</u>

   This Policy is the sole and complete agreement between Fannie Mae and its employees.

# Exhibit B

# Questions and Answers Pertaining to Fannie Mae's Dispute Resolution Policy
## Effective March 16, 1998

**Q. Why was the Dispute Resolution Policy (the "Policy") developed?**
A. In order to identify the most fair, efficient, and effective alternative to potentially costly and time-consuming litigation in court, the Office of Corporate Justice (OCJ) conducted extensive research and studied the dispute resolution policies of many other companies. We learned that, since it is typically faster to arbitrate employment disputes than to litigate them in court, the company and employees can save on legal fees and other expenses. In addition, the employees involved in the dispute can more quickly return to a cooperative and productive relationship with each other at work. As a result, we determined that arbitration would be a valuable tool for Fannie Mae and its employees.

**Q. What is arbitration?**
A. Arbitration is a process in which a claim is presented to a neutral person, called an arbitrator, instead of to a judge or jury in court. The arbitrator makes a decision on the claim after both sides present their evidence and arguments at an arbitration hearing. The hearing is much less formal than a court trial; however, the arbitrator is able to award the same relief as in court.

**Q. How is arbitration different from mediation?**
A. In arbitration, an arbitrator acts as both judge and jury, and applies the law in deciding who wins the dispute and in awarding relief. In mediation, the parties work together, with the help of a mediator, in an effort to reach an agreement. Unlike an arbitrator, a mediator has no power to decide the dispute in favor of either party, or to award any relief. Rather, the mediator helps the parties state their positions, and identify and communicate ideas for reaching agreement. Under the Policy, arbitration is required before an employee can bring a lawsuit in court. However, the Policy does not prevent the possibility of using mediation in an effort to resolve the dispute before an arbitrator or court resolves it for the parties.

**Q. Under the Policy, will I lose the right to go to court?**
A. No. The Policy simply requires that you use non-binding arbitration first. Because it is "non-binding," if you are not satisfied with the arbitrator's decision, you may reject it and bring suit in court. Fannie Mae, however, will not have the option of rejecting the decision, so if you do not reject the arbitrator's decision, that decision becomes the final resolution of the dispute.

**Q. Will the arbitrator be able to award the same amount of money damages or other relief that a judge or jury could in court?**
A. Yes. The arbitrator may award the same type and amount of damages and relief that would be available in court on the same claim(s), including attorneys' fees and expenses.

**Q. Who will administer arbitrations under the Policy?**
A. J·A·M·S/ENDISPUTE (J·A·M·S), a nationally-recognized dispute resolution service, will administer arbitrations under the Policy. J·A·M·S was selected because of its nationwide presence, the quality and experience of its arbitrators, the fairness of its administrative rules, and the types of services it provides. Formed in 1977, J·A·M·S maintains a panel of arbitrators who are primarily attorneys or retired judges.

**Q. What will it cost me to arbitrate?**

1

A. Fannie Mae will pay all arbitration filing and case management fees charged by J·A·M·S. In addition, Fannie Mae will pay J·A·M·S the arbitrator's fee, and J·A·M·S will pay the arbitrator directly, in order to protect the arbitrator's neutrality. However, if you use a lawyer or other representative for the arbitration, you must pay the fees and expenses of that lawyer or representative. You also must pay any costs of your own gathering of evidence or calling of expert or outside witnesses.

**Q. Who chooses the arbitrator?**
A. The employee and Fannie Mae will both choose an arbitrator through a process described in the Policy. J·A·M·S will send an identical list of arbitrators to the employee and Fannie Mae with a biography or resume for each person on the list. Once both parties have eliminated arbitrator candidates and ranked the remaining names on the list, J·A·M·S will choose the arbitrator, according to the rankings.

**Q. What qualifications will the arbitrator have?**
A. Arbitrators will be chosen from the J·A·M·S employment panel, which includes many lawyers and retired judges. In addition, the Policy requires that all arbitrator candidates have certain minimum qualifications, such as substantial experience in employment law.

**Q. May I have any complaint arbitrated?**
A. No. The Policy applies only to claims that relate to employment or termination, and involve certain rights protected by law, such as the right to be free from discrimination or harassment. The OCJEP also will continue to handle these types of claims internally, as well as claims regarding Fannie Mae's Code of Business Conduct and the company's policies and practices.

**Q. Must I submit a complaint to the OCJ before requesting arbitration?**
A. In most cases, the arbitration process will be used only as an alternative for employees who are not satisfied with the results of an OCJ investigation or mediation. However, filing a complaint with the OCJ before requesting arbitration is not required by the Policy. The OCJ will continue to offer all employees its dispute resolution services, and most claims will be effectively resolved without arbitration. In addition, in any circumstance where an employee submits a claim to arbitration without first filing a complaint with the OCJ, the OCJ still may conduct an investigation, before or during the arbitration proceedings.

**Q. Will I receive the arbitration decision in writing?**
A. Yes, the arbitrator will issue to Fannie Mae and to you a written decision that includes a statement of the reasons supporting it. However, the decision and all other aspects of the arbitration are required to be kept confidential by both parties, except in the limited circumstances identified in the Policy.

**Q. Can I submit the arbitration decision as evidence in court if I reject it and file a lawsuit?**
A. Yes. You (or Fannie Mae) may use the arbitration decision in a lawsuit brought on the same facts.

**Q. When will the Policy take effect and will it cover a complaint I have now?**
A. The Policy took effect on March 16, 1998. So, on or after that date, employees must arbitrate claims before filing suit, even if the facts or circumstances on which the claim is based occurred before then.

**Q. Do I have to arbitrate my complaint before filing a charge with the Equal Employment**

2

Opportunity Commission?
A. No. The Policy does not change or affect an employee's right to file a charge or complaint, at any time, with the Equal Employment Opportunity Commission, or any other administrative or fair employment rights agency. Nor does the Policy prevent an employee from assisting or cooperating with any such agency's investigations or proceedings. However, if an employee has an administrative charge or complaint pending while arbitrating it under the Policy, Fannie Mae will request that the agency suspend action on it while the matter is arbitrated. Whether or not the agency agrees to suspend action, arbitration under the Policy will go forward. Once an arbitration decision is issued, the employee will be free to decide whether to reject it, but if the employee does not reject it as provided in the Policy, he or she will be bound by it and may not receive any award resulting from the administrative charge or complaint nor from any lawsuit brought by the agency on the employee's behalf.

**Q. Will I be able to have a lawyer represent me in arbitration?**
A. Yes. You may have an attorney or other representative, at your own expense, present during any phase of arbitration.

**Q. Will I lose pay or benefits while attending the arbitration hearing on my claim?**
A. No. The company will excuse from their business duties, without loss of pay or benefits, all employees (including the employee who has requested arbitration) who are needed for the arbitration hearing.

**Q. Who is covered by the Policy?**
A. All Fannie Mae employees and managers, in every level/Job Family and position up through Executive Vice President, are covered by the Policy and required to arbitrate before bringing suit in court.

**Q. Can I reject only a portion of an arbitration decision and bring suit in court over the rest of it?**
A. No. You may reject only the entire arbitration decision.

**Q. Can Fannie Mae reject an arbitration decision?**
A. No. The Policy gives this right only to the employee.

**Q. Once a claim is submitted to arbitration, are the parties still free to try and resolve it through other means?**
A. Yes. For example, the Policy states that Fannie Mae and the employee may agree to mediate the dispute at any time before the arbitration hearing is held.

**Q. Where can I get more information about arbitration?**
A. JAMS provides a "hot-line" number, 1-800-219-9122, for Fannie Mae employees to call, Mondays through Fridays from 9:00 a.m. - 6:00 p.m. (E.S.T), with any questions about arbitration. Employees also are welcome to call the OCJ, (202) 752-7951, for information during working hours. In addition, the OCJ will answer questions posted on its cc:Mail bulletin board, "OCJ." All employee requests for anonymity will be honored.

**Q. Is the Dispute Resolution Policy a contract?**
A. Yes. The Policy binds Fannie Mae and all persons who started or continued their Fannie Mae employment on or after March 16, 1998. This means that if you started or continued to work for Fannie Mae on or after that date, you have accepted the Policy and agreed to be bound by it.

Q. Where will arbitration hearings be held?
A. J·A·M·S will decide on a location for the hearing, taking into account the convenience and resources of Fannie Mae and the employee.

Q. Does the new Policy change where I should go internally if I have a complaint or dispute?
A. No. You still are encouraged to resolve disputes through your chain of command. If you choose not to resolve the dispute through the chain of command, or if you are not satisfied with the attempted resolution, you can still can go directly to the Office of Corporate Justice, HR Account Team, or HR Regional Director. The Policy does not change your continuing obligation to internally report alleged misconduct described in the Code of Business Conduct.

Q. Who decides if my claim is covered under the Policy?
A. The arbitrator. The Policy covers only claims involving rights protected by law, so the arbitrator will look to the applicable law to decide if a claim is covered.

Q. What can I do if I don't like or agree with the arbitrator's decision?
A. You may, within 30 calendar days of the date of the decision, reject it by sending a completed "Rejection of Arbitration Award" form to J·A·M·S and the OCJ. After this is done, you may bring suit on the claim in court at your own expense.

Q. Will the Policy still apply to me if I am terminated or laid off from employment with Fannie Mae?
A. The Policy does not apply to employees who were terminated or laid off from employment with Fannie Mae prior to March 16, 1998. The Policy does apply to all persons who were employed by Fannie Mae on or after March 16, 1998, including those who were terminated or laid off since that date.

Q. What types of documents can be obtained in the exchange of information?
A. A party to the arbitration may obtain documents that are not protected by privilege (such as attorney-client privilege) and that contain information relevant to the claim.

Q. What happens if I file a lawsuit against Fannie Mae, involving a claim covered by the Policy, before arbitrating it?
A. Fannie Mae will ask the court to order you to arbitrate the claim under the Policy.

Q. How will the OCJ be involved in the arbitration process?
A. The OCJ will answer employees' questions about arbitration and the Policy, and make appropriate forms available for requesting arbitration and for rejecting an arbitration decision.