# Exhibit 4

## Evans, Pete (WAS - X77043)

| | |
|---|---|
| **From:** | McGwin, Madonna A [madonna_a_mcgwin@fanniemae.com] |
| **Sent:** | Friday, December 23, 2005 4:17 PM |
| **To:** | jmh@tomnh.com; sgr@tomnh.com |
| **Subject:** | Arbitration Package |

| | |
|---|---|
| **Importance:** | High |
| **Sensitivity:** | Private |

| | |
|---|---|
| **Attachments:** | Thompson O'Donnell ltr & ArbPackage.pdf; Arbitration Package email.pdf |


Thompson
'Donnell ltr & ArbPa.


Arbitration Package
email.pdf ...

                    To:  J. Michael Hannon, Esq., & Sean G. Ryan, Esq.
        Thompson O'Donnell, LLP

Re:  Your client, Maxwell J. Kimpson

Please find attached pdf files of a letter regarding your client and its
enclosure.  I will be mailing the originals to you this afternoon.

Sincerely,


Madonna A. McGwin

Associate General Counsel

Legal Department/Employment Practice Group

Fannie Mae

3900 Wisconsin Avenue, N.W.

Washington, D.C.   20016-2892

Tel:  202-752-8485

Confidential eFax: (703) 842-8376

 <blocked::blocked::mailto:madonna_a_mcgwin@fanniemae.com>
madonna_a_mcgwin@fanniemae.com

# FannieMae

3900 Wisconsin Avenue, NW
Washington, DC 20016-2892

Madonna A. McGwin
Associate General Counsel
Direct Tel: 202.752.8485
Direct Fax: 703.842.8376
madonna_a_mcgwin@fanniemae.com

December 23, 2005

## VIA Email and FIRST CLASS MAIL

J. Michael Hannon, Esq.
Sean G. Ryan, Esq.
1212 New York Avenue, N.W.
Suite 1000
Washington, D.C.   2005

　　　　Re:　　*Maxwell J. Kimpson*

Dear Messrs. Hannon and Ryan:

　　　　I understand that you are considering, on behalf of your client Maxwell J. Kimpson, filing an action in the United States District Court relating to claims that Mr. Kimpson raised in his administrative complaint (now before the Occupational Safety and Health Administration).  As I'm sure Mr. Kimpson knows, Fannie Mae's Dispute Resolution Policy requires him to submit his employment-related claims to JAMS-administered arbitration[1] as a condition precedent to filing a lawsuit regarding those same claims.  In that regard, I have attached for your reference and use, Fannie Mae's Employee Arbitration Package (including Fannie Mae's Dispute Resolution Policy, some detailed information about the Policy, the Demand for Arbitration form, and JAMS' Rules).

　　　　Feel free to contact me if you have any other questions.  As noted above, my direct dial number is 202-752-8485.

　　　　　　　　　　Sincerely,

　　　　　　　　　　Madonna A. McGwin

Enclosures

---

[1]　Section 4 of the Policy designates JAMS/ENDISPUTE (now known as "JAMS") as the administrator of any arbitration brought under the Policy.

**DEMAND FOR ARBITRATION**

*To submit a claim to arbitration under Fannie Mae's Dispute Resolution Policy, you (or your attorney or representative, if any) must complete this form and submit it to:*

JAMS - The Resolution Experts
Attention: Fannie Mae Case Manager
555 13th Street, N.W., Suite 400W
Washington, D.C. 20004
Main Tel: 202-942-9150
Facsimile: 202-942-8186

and a copy to:

The Office of Corporate Justice
Fannie Mae
~~3900 Wisconsin Avenue, NW~~ 4250 Connecticut Ave. NW
Mailstop: ~~1H-1E/09~~ 8H-205
Washington, DC ~~20016~~ 20008
(FAX: 202-752-0318)

Your Name:_____    Home Phone:_____

Work Address:_____    Work Phone:_____

Home Address:_____

_____

Calls or correspondence related to your claim
should be directed to you at ☐ home or ☐ work

Name, Work Address, Phone, Fax of Attorney or Representative (if any):

_____
_____
_____

| Legally-Protected Right(s) Involved in Your Claim: |
| --- |
| (Identify all such rights that you believe have been violated.) |

| Detailed Description of Your Claim: |
| --- |
| (Provide all relevant fact and dates. If more room is needed, you may attach a separate sheet.) |

| Relief/Remedies Requested: |
| --- |
| (Specify all relief/remedies you are seeking.) |

**I SUBMIT THIS CLAIM TO ARBITRATION UNDER FANNIE MAE'S DISPUTE RESOLUTION POLICY.**

_____    _____
(Your signature or signature of your attorney or representative)    Date

*(Send white copy to J●A●M●S; send yellow copy to OCJ; keep pink copy for your records)*

 **FannieMae**

MEMORANDUM

Date        :    January 12, 1998

To          :    All Employees

From        :    Tom Nides  *TRN*
                 Senior Vice President, Human Resources

Subject     :    Arbitration at Fannie Mae

Fannie Mae is committed to maintaining a productive and comfortable working environment for all employees. In the spirit of this commitment, the company created the Office of Corporate Justice (OCJ), which helps to prevent and resolve employment disputes through a variety of tools, including training, mediation, investigation, and counseling. Now, the OCJ has developed an important new tool for resolving a wide range of employment disputes: non-binding arbitration. This valuable process is described in the attached "Dispute Resolution Policy."

The Policy was developed using information gained through extensive research, benchmarking, and focus group feedback from hundreds of Fannie Mae employees. Through this research, it became clear that non-binding arbitration is highly regarded by employees.

Here's how it works. A neutral outside person, called an arbitrator, hears both sides of a claim and then makes a written decision that is based on the facts, evidence, and law. Because arbitration decisions generally are issued much faster than court decisions, employees and the company may resolve claims faster and be able to resume "business as usual" in a much shorter period of time.

The new Policy requires that employees bring certain employment-related claims against Fannie Mae to arbitration before they can bring suit in court. However, please keep in mind one very important fact: the Policy does not bar employees from going to court. Once the claim is arbitrated, the employee has a choice: he or she can reject the arbitrator's decision and bring the claim to court; or he or she can accept the arbitrator's decision so that Fannie Mae and the employee become bound by it. On the other hand, Fannie Mae cannot reject the arbitrator's decision; once it is accepted by the employee, Fannie Mae is bound by it.

Arbitration is a fair process that, in most cases, will resolve employees' claims. In addition, the Policy will protect the interests of all concerned. For example, at the beginning of each arbitration, the employee and Fannie Mae will work together to select the arbitrator from a list of candidates provided by JAMS/ENDISPUTE, an

All-Employee Memo from Tom Nides
Introducing Arbitration at Fannie Mae
January 12, 1998
Page Two

independent national arbitration service that will handle arbitrations under the Policy. In addition, employees will not pay any share of the filing and administrative fees for the arbitration, nor any part of the arbitrator's fees. Finally, employees can receive the same relief in arbitration that they could receive from a court.

**It is very important that you read the Dispute Resolution Policy and the other materials attached to this memorandum, because on March 16, 1998 the Policy will become a condition of employment for you and all other Fannie Mae employees. This means that, by starting or continuing to work for Fannie Mae on or after that date, you are indicating that you accept the Policy as a condition of employment and agree to be bound by it. Fannie Mae is also promising to be bound by the Policy. The Policy does not change the employment-at-will relationship between Fannie Mae and its employees.**

In addition, to answer any questions you have on the new arbitration Policy, the OCJ staff will be holding "brown bag" lunch-time discussions and question-and-answer sessions in Fannie Mae's D.C., Herndon, and regional offices. You also may call the OCJ, (202) 752-7951, with questions or requests for additional information, or post questions for the OCJ to answer on its cc:Mail bulletin board, "OCJ."

Attachments:
• Fannie Mae's Dispute Resolution Policy
• JAMS/ENDISPUTE's Arbitration Rules and Procedures for Employment Disputes
• Questions and Answers About Fannie Mae's Dispute Resolution Policy



# DISPUTE RESOLUTION POLICY

In any work environment, job-related disputes occasionally arise.  At Fannie Mae, these are usually resolved through the Company's open door policy or the efforts of the Office of Corporate Justice ("OCJ"), which addresses disputes using a variety of alternative dispute resolution tools, including counseling, facilitated negotiation, mediation, and investigation/decision.  With the introduction of this Dispute Resolution Policy ("Policy"), certain job-related claims must go through arbitration by a neutral independent arbitrator before a suit can be brought on them in court.

Arbitration is a process in which a claim is presented to a neutral person (an arbitrator) instead of to a judge or jury in court.  The arbitrator makes a decision on the claim after both sides present their evidence and arguments at an arbitration hearing.  The hearing is much less formal than a court trial.

**The effective date of the Policy is March 16, 1998.  On that date, the Policy becomes a condition of employment for all Fannie Mae employees.  This means that, by starting or continuing work for Fannie Mae on or after that date, each employee is indicating that he or she accepts the Policy as a condition of employment and agrees to be bound by it.  Fannie Mae also promises to be bound by the Policy.**

1. <u>Arbitration as Prerequisite to Lawsuit</u>.

If an employee[1] has a claim that is covered under Section 2 of this Policy, he or she must arbitrate the claim under this Policy before bringing suit on it in court.

2. <u>Claims Covered by the Policy</u>.

The Policy applies to all claims that an employee might make against Fannie Mae (and its directors, officers, agents, or employees, in their representative capacities) involving a legally-protected right, that directly or indirectly relate to his or her employment or the termination of that employment, even if the claim is based on facts or circumstances that occurred before the effective date of the Policy.  These include claims involving rights protected by any federal, state, or other governmental constitution, statute, ordinance, regulation, or common law.  For example, claims asserting rights protected by the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act,

---

[1] As used in the Policy, the word "employee" includes current or former Fannie Mae regular, term, and temporary employees (including paid interns).  Independent contractors and third-party contract employees are not covered by the Policy.

1

the Americans with Disabilities Act, 42 U.S.C. § 1981, or the Family and Medical Leave Act would be covered by the Policy.

The Policy does not apply to any claim that is filed in court or with the EEOC or any other administrative or fair employment rights agency before the effective date of the Policy. The Policy also does not apply to any claim made in connection with workers' compensation benefits, unemployment compensation benefits, or under any of Fannie Mae's employee welfare benefit, ERISA, or pension plans, or to any claim of unfair competition, disclosure of trade secrets, or breach of trust or fiduciary duty.

The Company may assert that the employee's claim is barred because it does not involve a legally-protected right, and the arbitrator may be requested to rule on this issue as a preliminary matter before conducting a hearing on the substance of the employee's claim.

3.  <u>Right to Pursue Administrative Complaints</u>.

The Policy does not change or in any way affect an employee's right to file a charge or complaint with the EEOC or any other administrative or fair employment rights agency. During an employee's participation or involvement in any of Fannie Mae's dispute resolution processes (including arbitration under the Policy), there will be no suspension, extension, or postponement of any applicable time limit or deadline by which the employee is required to file such an administrative charge or complaint. The Policy does not bar or restrict any employee, at any time, from assisting or cooperating with any such agency's investigations or proceedings. However, if an employee has an administrative charge or complaint pending while arbitrating it under the Policy, Fannie Mae will ask the agency to suspend its proceedings while the matter is arbitrated. Regardless of whether the agency agrees to suspend its proceedings, arbitration under the Policy will proceed.

4.  <u>Election of Arbitration</u>.

If the OCJ has not resolved, to the employee's satisfaction, an employee's complaint involving a legally-protected right, the employee may initiate arbitration by sending a completed "Demand for Arbitration" form (which may be obtained from the OCJ) to JAMS/ENDISPUTE ("JAMS") and a copy to the OCJ. JAMS is the independent and neutral national arbitration service that will administer all arbitrations under the Policy. If an employee submits a "Demand for Arbitration" form to JAMS before the OCJ has investigated the claim, the OCJ may conduct an internal investigation while the arbitration is proceeding, and the employee will have a continuing obligation to cooperate fully and candidly with the OCJ investigator. At any time before the arbitration hearing is held, the parties may agree to submit the complaint to mediation.

2



5. Rules and Procedures.

Arbitration will be conducted under the rules and procedures contained in the Policy, supplemented by JAMS's Arbitration Rules and Procedures for Employment Disputes ("JAMS's rules"). In the event of a conflict between JAMS's rules and those contained in the Policy, the Policy will prevail.

6. Time Limit on Submission of Claims.

In order for an employee's claim to be eligible for arbitration, JAMS must receive the employee's completed "Demand for Arbitration" form within the time limit set by law for bringing suit on that claim in court. If the Company contends that the claim was not made within the time limit, the arbitrator may be requested to decide the issue before any hearing on the substance of the claim. If JAMS receives the "Demand for Arbitration" form within the time limit for bringing suit in court, but that time limit runs out during the arbitration, the Company will agree to extend the time limit for up to 60 calendar days after the date of the arbitration decision, so that the employee has an opportunity to bring a timely suit on the claim in court, if he or she rejects the decision as provided in this Policy.

7. Arbitrator Selection and Replacement.

For each arbitration under the Policy, the employee and the Company will mutually select one arbitrator from among the qualified arbitrator candidates identified by JAMS. Each arbitrator candidate will have the following qualifications:

- attorney or former/retired judge;
- minimum of seven years' experience in legal and/or judicial practice; and
- substantial employment law experience (as determined by JAMS).

After receiving the employee's completed "Demand for Arbitration" form, JAMS will prepare and submit, to the employee and the Company, a list containing five arbitrator candidates who have the qualifications stated above, together with their resumes or biographical summaries. Within seven calendar days after JAMS sends the list of arbitrator candidates, each party must strike up to two names from it, rank the remaining arbitrator candidates in order of preference, and return the list to JAMS. If there is more than one candidate remaining after the parties' strikes, JAMS will appoint as arbitrator the one with the highest total ranking by the parties. If a highest total ranking cannot be determined, then JAMS will designate the arbitrator from among the candidates who have not been stricken. If a party fails to send the list back to JAMS within the seven calendar days, JAMS will assume that the party has accepted all of the arbitrator candidates on the list.

If, for any reason, the arbitrator is unable to fulfill his or her duties, a successor

3



arbitrator will be chosen in this manner.

8.  Employee Participation.

Fannie Mae will excuse from their business duties, without loss of pay or benefits, all employees (including the employee who has made the claim) who are needed to provide testimony or attend arbitration proceedings, for such time as they are needed and actively participating.

9.  Representation.

The employee may have an attorney or other representative, at his or her sole expense, present during any phase of arbitration.

The Legal Department will arrange for the Company's representation in arbitration.  However, the Legal Department may advise a manager to secure his or her own representation if it determines that the manager's interests may be in conflict with the Company's.

10.  Exchange of Information.

The employee and Fannie Mae each will be entitled to obtain relevant information from the other prior to the arbitration hearing, through informal exchange and:

- request(s) that the other party produce a reasonable number of relevant documents;
- one request that the other party answer not more than 25 relevant questions, including sub-parts;
- two or fewer "fact" witness depositions; and
- "expert" witness depositions.

11.  Fees and Expenses.

Fannie Mae will pay all arbitration filing, case management, and/or administrative fees charged by JAMS, as well as all hourly or daily fees of the arbitrator.  In order to preserve the impartiality of the arbitrator, the Company will make all such payments to JAMS, and JAMS will in turn pay the arbitrator's fees.

An employee who chooses to have a lawyer or other representative for the arbitration must pay all of that lawyer's or representative's fees and expenses.  In addition, each party must pay all of its own expenses for acquiring or "discovering" information or testimony (e.g., taking an individual's deposition), and the fees and expenses of its "expert" or outside witness(es).

4



12.  The Arbitration Hearing.

Either party may offer as evidence, and the arbitrator may admit into the record or consider, any agreement the parties have reached for resolving any claim(s) being arbitrated, and any findings and remedial actions resulting from a Company investigation into the same or substantially similar facts underlying the claim(s) being arbitrated.

13.  The Award.

The arbitrator's decision ("Award") will consist of a written statement of disposition and relief, if any; and a written statement of reasons supporting the disposition and relief, if any.  The Award will be based on the facts and the prevailing judicial interpretation of applicable law.  The arbitrator may award any remedy or relief to the employee that is consistent with the arbitrator's authority under the law governing the employee's claim, including attorneys' fees and expenses.  The Award is admissible as evidence in any litigation or proceeding on any claim arising out of the same facts or circumstances that were raised, presented, or decided in the arbitration.

14.  Rejection/Acceptance of the Award.

The employee may, *within 30 calendar days of the date of issuance of the Award*, reject it, in its entirety, by sending a completed "Rejection of Arbitration Award" form to JAMS and the OCJ.  If the employee rejects the Award, it will not become binding on the employee or the Company, and the employee may bring suit on the claim at his or her own expense.

If the employee does not reject the Award during the 30-day period, the Award becomes binding on both the Company and the employee, and the employee may not bring suit against Fannie Mae (or its directors, officers, agents, or employees, in their representative capacities) on any claims arising out of the same facts or circumstances that were raised, presented, or decided in the arbitration.  If the employee does not reject the Award, he or she may not receive any award resulting from his or her EEOC or other administrative charge, or from any lawsuit brought by the EEOC or other administrative or fair employment rights agency on any claim arising out of the same facts or circumstances that were raised, presented, or decided in the arbitration.  If the employee has filed a charge with the EEOC or any other administrative or fair employment rights agency, Fannie Mae will notify the agency that the claim has been resolved through arbitration.

At the expense of the party requesting it, any court having jurisdiction over a binding Award may enter an order giving it the force of law.

15.  Enforcement of the Award.

Proceedings to enforce, confirm, modify or vacate an Award will be subject to the standard of review set forth in the Federal Arbitration Act (FAA).

16.  Interpretation and Governing Law.

The arbitrator will resolve all disputes over the interpretation and applicability of the Policy, and over the arbitrability of all matters presented under it.  This Policy is an agreement to arbitrate pursuant to the FAA.  The Policy will, in all respects, be interpreted, enforced, and governed under the FAA.

17.  Severability/Waiver.

If any provision of this Policy is held to be legally invalid or unenforceable, it will not affect the remainder of this Policy, which will continue to be in full force and effect. No failure by the Company or the employee to insist on strict compliance with any part of the Policy will be interpreted as a waiver of that part of the Policy.

18.  Confidentiality and Privacy.

The entire arbitration proceeding, including all statements, documents, evidence, and the Award, is confidential and will not be disclosed to anyone other than the parties, their representatives, the JAMS Case Administrator, the Legal Department, and the OCJ, except:  (i) to the extent that the parties agree otherwise in writing; (ii) as necessary to respond to a lawful order of a governmental official or agency; (iii) for use in a judicial proceeding to enforce, confirm, modify, or vacate an Award; or (iv) as offered into evidence in any litigation or proceeding on any claim arising out of the same facts or circumstances that were raised, presented, or decided in the arbitration.

19.  Employment-At-Will; Discontinuation of Policy.

Nothing in the Policy, or any of the communications or materials describing or implementing it, changes the employment-at-will relationship between Fannie Mae and its employees.  The Company may discontinue the Policy at any time by giving employees 30 calendar days' written notice, but the Policy will continue to apply to all claims submitted for arbitration before or during the notice period.

20.  Complete Agreement.

This Policy is the sole and complete agreement between Fannie Mae and its employees.



**JAMS**

THE RESOLUTION EXPERTS®

*Revised February 19, 2005*

# JAMS Comprehensive Arbitration Rules & Procedures

**Comprehensive Arbitration Rules & Procedures**

## Table of Contents

Rule 1.   Scope of Rules ............................................................. 2
Rule 2.   Party-Agreed Procedures ............................................ 2
Rule 3.   Amendment of Rules .................................................. 2
Rule 4.   Conflict with Law ....................................................... 2
Rule 5.   Commencing an Arbitration ....................................... 2
Rule 6.   Preliminary and Administrative Matters ..................... 3
Rule 7.   Number of Arbitrators and Appointment of Chairperson .... 3
Rule 8.   Service ..................................................................... 3
Rule 9.   Notice of Claims ....................................................... 4
Rule 10.  Changes of Claims .................................................... 4
Rule 11.  Interpretation of Rules and Jurisdictional Challenges ........... 4
Rule 12.  Representation .......................................................... 5
Rule 13.  Withdrawal from Arbitration ...................................... 5
Rule 14.  *Ex Parte* Communications ....................................... 5
Rule 15.  Arbitrator Selection and Replacement ....................... 5
Rule 16.  Preliminary Conference ............................................. 6
Rule 17.  Exchange of Information ............................................ 6
Rule 18.  Summary Disposition of a Claim or Issue ................... 7
Rule 19.  Scheduling and Location of Hearing .......................... 7
Rule 20.  Pre-Hearing Submissions .......................................... 7
Rule 21.  Securing Witnesses and Documents
          for the Arbitration Hearing ........................................ 8
Rule 22.  The Arbitration Hearing ............................................ 8
Rule 23.  Waiver of Hearing ..................................................... 9
Rule 24.  The Award ............................................................... 9
Rule 25.  Enforcement of the Award ...................................... 10
Rule 26.  Confidentiality and Privacy ..................................... 10
Rule 27.  Waiver .................................................................... 10
Rule 28.  Settlement and Consent Award ............................... 10
Rule 29.  Sanctions ............................................................... 11
Rule 30.  Disqualification of the Arbitrator as a Witness
          or Party and Exclusion of Liability ........................... 11
Rule 31.  Fees ....................................................................... 11
Rule 32.  Bracketed (or High-Low) Arbitration Option ............ 11
Rule 33.  Final Offer (or Baseball) Arbitration Option ............. 12
Rule 34.  Optional Arbitration Appeal Procedure .................... 12




*JAMS Comprehensive Arbitration Rules & Procedures*

*NOTICE: These Rules are the copyrighted property of JAMS. They cannot be copied, reprinted or used in any way without permission of JAMS, unless they are being used by the parties to an arbitration as the rules for that arbitration. If they are being used as the rules for an arbitration, proper attribution must be given to JAMS. If you wish to obtain permission to use our copyrighted materials, please contact JAMS at 949-224-1810.*

## Rule 1.    Scope of Rules

(a)   The JAMS Comprehensive Arbitration Rules and Procedures ("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, any disputed claim or counterclaim that exceeds $250,000, not including interest or attorneys' fees, unless other Rules are prescribed.

(b)   The Parties shall be deemed to have made these Rules a part of their Arbitration agreement whenever they have provided for Arbitration by JAMS under its Comprehensive Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.

(c)   The authority and duties of JAMS are prescribed in the agreement of the Parties and in these Rules, and may be carried out through such of JAMS representatives as it may direct.

(d)   JAMS may, in its discretion, assign the administration of an Arbitration to any of its offices.

(e)   The term "Party" as used in these Rules includes Parties to the Arbitration and their counsel or representatives.

## Rule 2.    Party-Agreed Procedures

The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies (including, without limitation, Rules 15(i), 30 and 31). The Parties shall promptly notify JAMS of any such Party-agreed procedures and shall confirm such procedures in writing. The Party-agreed procedures shall be enforceable as if contained in these Rules.

## Rule 3.    Amendment of Rules

JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration (as defined in Rule 5) shall apply to that Arbitration, unless the Parties have specified another version of the Rules.

## Rule 4.    Conflict with Law

If any of these Rules, or a modification of these Rules agreed on by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern, and no other Rule will be affected.

## Rule 5.    Commencing an Arbitration

(a)   The Arbitration is deemed commenced when JAMS confirms in a Commencement Letter one of the following:

(i)   The submission to JAMS of a post-dispute Arbitration agreement fully executed by all Parties and that specifies JAMS administration or use of any JAMS Rules; or

(ii)   The submission to JAMS of a pre-dispute written contractual provision requiring the Parties to arbitrate the dispute or claim and which specifies JAMS administration or use of any JAMS Rules or which the Parties agree shall be administered by JAMS; or

(iii)   The oral agreement of all Parties to participate in an Arbitration administered by JAMS or conducted pursuant to any JAMS Rules, confirmed in writing by the Parties; or

(iv)   A court order compelling Arbitration at JAMS.

(b)   The Commencement Letter shall confirm that one of the above requirements for commencement has been met and that JAMS has received any payment required under the applicable fee schedule. The date of commencement of the Arbitration is the date of the Commencement Letter.

(c)   If a Party who has signed a pre-dispute written contractual provision specifying these Rules or JAMS administration fails to agree to participate in the Arbitration process, JAMS shall confirm in writing that Party's failure to respond or participate and, pursuant to Rule

*Revised 2005*

22, the Arbitrator shall schedule, and provide appropriate notice of a Hearing or other opportunity for the Party demanding the Arbitration to demonstrate its entitlement to relief.

(d)  The definition of "commencement" in these Rules is not intended to be applicable to any legal requirement, such as the statute of limitations or a contractual limitations period, unless actually so specified by that requirement.

## Rule 6.  Preliminary and Administrative Matters

(a)  JAMS may convene, or the Parties may request, administrative conferences to discuss any procedural matter relating to the administration of the Arbitration.

(b)  At the request of a Party and in the absence of Party agreement, JAMS may make a determination regarding the location of the Hearing, subject to Arbitrator review. In determining the location of the Hearing such factors as the subject matter of the dispute, the convenience of the Parties and witnesses and the relative resources of the Parties shall be considered.

(c)  If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings. JAMS may so inform the Parties in order that one of them may advance the required payment. An administrative suspension shall toll any other time limits contained in these Rules, applicable statutes or the Parties' agreement.

(d)  JAMS does not maintain a duplicate file of documents filed in the Arbitration. If the Parties wish to have any documents returned to them, they must advise JAMS in writing within 30 days of the conclusion of the Arbitration. If special arrangements are required regarding file maintenance or document retention, they must be agreed to in writing and JAMS reserves the right to impose an additional fee for such special arrangements.

(e)  If more than one arbitration is filed at JAMS, and if JAMS or the Arbitrator determines there are common issues of fact or law,

JAMS or the Arbitrator may consolidate the Arbitrations.

## Rule 7.  Number of Arbitrators and Appointment of Chairperson

(a)  The Arbitration shall be conducted by one neutral Arbitrator unless all Parties agree otherwise. In these Rules, the term "Arbitrator" shall mean, as the context requires, the Arbitrator or the panel of Arbitrators in a tripartite Arbitration.

(b)  In cases involving more than one Arbitrator the Parties shall agree on, or in the absence of agreement JAMS shall designate, the Chairperson of the Arbitration Panel. If the Parties and the Arbitrator agree, the Chairperson may, acting alone, decide discovery and procedural matters.

(c)  Where the Parties have agreed that each Party is to name one Arbitrator, the Arbitrators so named shall be neutral and independent of the appointing Party unless the Parties have agreed that they shall be non-neutral.

## Rule 8.  Service

(a)  Service under these Rules is effected by providing one copy of the document with original signatures to each Party and two copies in the case of a sole Arbitrator and four copies in the case of a tripartite panel to JAMS. Service may be made by hand-delivery, overnight delivery service or U.S. mail. Service by any of these means is considered effective upon the date of deposit of the document. Service by facsimile transmission is considered effective upon transmission, but only if followed within one week of delivery by service of an appropriate number of copies and originals by one of the other service methods.

(b)  In computing any period of time prescribed or allowed by these Rules for a Party to do some act within a prescribed period after the service of a notice or other paper on the Party and the notice or paper is served on the Party only by U.S. Mail, three (3) calendar days shall be added to the prescribed period.

JAMS Comprehensive Arbitration Rules & Procedures



JAMS Comprehensive Arbitration Rules & Procedures

### Rule 9.  Notice of Claims

(a)  If a matter has been submitted for Arbitration after litigation has been commenced in court regarding the same claim or dispute, the pleadings in the court case, including the complaint and answer (with affirmative defenses and counterclaims), may be filed with JAMS within fourteen (14) calendar days of the date of commencement, and if so filed, will be considered part of the record of the Arbitration. It will be assumed that the existence of such pleadings constitutes appropriate notice to the Parties of such claims, remedies sought, counterclaims and affirmative defenses. If necessary, such notice may be supplemented pursuant to Rule 9(b).

(b)  If a matter has been submitted to JAMS prior to or in lieu of the filing of a case in court or prior to the filing of an answer, the Parties shall give each other notice of their respective claims, remedies sought, counterclaims and affirmative defenses (including jurisdictional challenges). Such notice may be served upon the other Parties and filed with JAMS, in the form of a demand for Arbitration, response or answer to demand for Arbitration, counterclaim or answer or response to counterclaim. Any pleading shall include a short statement of its factual basis.

(c)  Notice of claims, remedies sought, counterclaims and affirmative defenses may be served simultaneously, in which case they should be filed with JAMS within fourteen (14) calendar days of the date of commencement of the Arbitration, or by such other date as the Parties may agree. The responding Parties may, however, in their sole discretion, wait to receive the notice of claim before serving any response, including counterclaims or affirmative defenses. In this case, the response, including counterclaims and affirmative defenses, should be served on the other Parties and filed with JAMS within fourteen (14) calendar days of service of the notice of claim. If the notice of claim has been served on the responding Parties prior to the date of commencement, the response, including counterclaims and affirmative defenses, shall be served within fourteen (14) calendar days from the date of commencement.

(d)  Any Party that is a recipient of a counterclaim may reply to such counterclaim, including asserting jurisdictional challenges. In such case, the reply must be served on the other Parties and filed with JAMS within fourteen (14) calendar days of having received the notice of counterclaim. No claim, remedy, counterclaim or affirmative defense will be considered by the Arbitrator in the absence of prior notice to the other Parties, unless all Parties agree that such consideration is appropriate notwithstanding the lack of prior notice.

### Rule 10.  Changes of Claims

After the filing of a claim and before the Arbitrator is appointed, any Party may make a new or different claim. Such claim shall be made in writing, filed with JAMS and served on the other Parties. Any response to the new claim shall be made within fourteen (14) calendar days after service of such claim. After the Arbitrator is appointed, no new or different claim may be submitted except with the Arbitrator's approval. A Party may request a Hearing on this issue. Each Party has the right to respond to any new claim in accordance with Rule 9(c).

### Rule 11.  Interpretation of Rules and Jurisdictional Challenges

(a)  Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.

(b)  Whenever in these Rules a matter is to be determined by "JAMS" (such as in Rules 6, 11(d), 15(d), (f) or (g), 24(i) or 31(e)), such determination shall be made in accordance with JAMS administrative procedures.

(c)  Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(d)  Disputes concerning the appointment of the Arbitrator and the venue of the Arbitra-

Revised 2005

tion, if that determination is relevant to the selection of the Arbitrator, shall be resolved by JAMS.

(e)   The Arbitrator may upon a showing of good cause or sua sponte, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may only be altered in accordance with Rules 22(i) or 24.

## Rule 12. Representation
The Parties may be represented by counsel or any other person of the Party's choice. Each Party shall give prompt written notice to the Case Manager and the other Parties of the name, address and telephone and fax numbers of its representative. The representative of a Party may act on the Party's behalf in complying with these Rules.

## Rule 13. Withdrawal from Arbitration
(a)   No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5) except by written agreement of all Parties to the Arbitration.

(b)   A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and on the Arbitrator. However, the opposing Parties may, within fourteen (14) calendar days of service of notice of the withdrawal of the claim or counterclaim, request that the Arbitrator order that the withdrawal be with prejudice.

## Rule 14. *Ex Parte* Communications
No Party may have any *ex parte* communication with a neutral Arbitrator regarding any issue related to the Arbitration. Any necessary *ex parte* communication with JAMS, whether before, during or after the Arbitration Hearing, shall be conducted through JAMS. The Parties may agree to permit *ex parte* communication between a Party and a non-neutral Arbitrator.

## Rule 15. Arbitrator Selection and Replacement
(a)   Unless the Arbitrator has been previously selected by agreement of the Parties, JAMS may attempt to facilitate agreement among

the Parties regarding selection of the Arbitrator.

(b)   If the Parties do not agree on an Arbitrator, JAMS shall send the Parties a list of at least five (5) Arbitrator candidates in the case of a sole Arbitrator and ten (10) Arbitrator candidates in the case of a tripartite panel. JAMS shall also provide each Party with a brief description of the background and experience of each Arbitrator candidate.

(c)   Within seven (7) calendar days of service upon the Parties of the list of names, each Party may strike two (2) names in the case of a sole Arbitrator and three (3) names in the case of a tripartite panel, and shall rank the remaining Arbitrator candidates in order of preference. The remaining Arbitrator candidate with the highest composite ranking shall be appointed the Arbitrator.  JAMS may grant a reasonable extension of the time to strike and rank the Arbitrator candidates to any Party without the consent of the other Parties.

(d)   If this process does not yield an Arbitrator or a complete panel, JAMS shall designate the sole Arbitrator or as many members of the tripartite panel as are necessary to complete the panel.

(e)   If a Party fails to respond to the list of Arbitrator candidates within seven (7) calendar days of service by the Parties of the list, JAMS shall deem that Party to have accepted all of the Arbitrator candidates.

(f)   Entities whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of the Arbitrator selection process. JAMS shall determine whether the interests between entities are adverse for purposes of Arbitrator selection, considering such factors as whether the entities are represented by the same attorney and whether the entities are presenting joint or separate positions at the Arbitration.

(g)   If, for any reason, the Arbitrator who is selected is unable to fulfill the Arbitrator's duties, a successor Arbitrator shall be chosen in accordance with this Rule. If a member of a panel of Arbitrators becomes unable to fulfill his or her duties after the beginning of a Hear-

ing but before the issuance of an Award, a new Arbitrator will be chosen in accordance with this Rule unless, in the case of a tripartite panel, the Parties agree to proceed with the remaining two Arbitrators. JAMS will make the final determination as to whether an Arbitrator is unable to fulfill his or her duties, and that decision shall be final.

(h) Any disclosures regarding the selected Arbitrator shall be made as required by law or within ten (10) calendar days from the date of appointment. The obligation of the Arbitrator to make all required disclosures continues throughout the Arbitration process.

(i) At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause. The challenge must be based upon information that was not available to the Parties at the time the Arbitrator was selected. A challenge for cause must be in writing and exchanged with opposing Parties who may respond within seven (7) days of service of the challenge. JAMS shall make the final determination on such challenge. Such determination shall take into account the materiality of the facts and any prejudice to the parties. That decision will be final.

## Rule 16. Preliminary Conference
At the request of any Party or at the direction of the Arbitrator, a Preliminary Conference shall be conducted with the Parties or their counsel or representatives. The Preliminary Conference may address any or all of the following subjects:

(a) The exchange of information in accordance with Rule 17 or otherwise;

(b) The schedule for discovery as permitted by the Rules, as agreed by the Parties or as required or authorized by applicable law;

(c) The pleadings of the Parties and any agreement to clarify or narrow the issues or structure the Arbitration Hearing;

(d) The scheduling of the Hearing and any prehearing exchanges of information, exhibits, motions or briefs;

(e) The attendance of witnesses as contemplated by Rule 21;

(f) The scheduling of any dispositive motion pursuant to Rule 18;

(g) The premarking of exhibits; preparation of joint exhibit lists and the resolution of the admissibility of exhibits;

(h) The form of the Award; and

(i) Such other matters as may be suggested by the Parties or the Arbitrator.

The Preliminary Conference may be conducted telephonically and may be resumed from time to time as warranted.

## Rule 17. Exchange of Information
(a) The Parties shall cooperate in good faith in the voluntary, prompt and informal exchange of all non-privileged documents and other information relevant to the dispute or claim immediately after commencement of the Arbitration.

(b) The Parties shall complete an initial exchange of all relevant, non-privileged documents, including, without limitation, copies of all documents in their possession or control on which they rely in support of their positions, names of individuals whom they may call as witnesses at the Arbitration Hearing, and names of all experts who may be called to testify at the Arbitration Hearing, together with each expert's report that may be introduced at the Arbitration Hearing, within twenty-one (21) calendar days after all pleadings or notice of claims have been received. The Arbitrator may modify these obligations at the Preliminary Conference.

(c) Each Party may take one deposition of an opposing Party or of one individual under the control of the opposing Party. The Parties shall attempt to agree on the time, location and duration of the deposition, and if the Parties do not agree these issues shall be determined by the Arbitrator. The necessity of additional

depositions shall be determined by the Arbitrator based upon the reasonable need for the requested information, the availability of other discovery options and the burdensomeness of the request on the opposing Parties and the witness.

(d)   As they become aware of new documents or information, including experts who may be called upon to testify, all Parties continue to be obligated to provide relevant, non-privileged documents, to supplement their identification of witnesses and experts and to honor any informal agreements or understandings between the Parties regarding documents or information to be exchanged. Documents that have not been previously exchanged, or witnesses and experts not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause.

(e)   The Parties shall promptly notify JAMS when an unresolved dispute exists regarding discovery issues. JAMS shall arrange a conference with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute. With the written consent of all Parties, and in accordance with an agreed written procedure, the Arbitrator may appoint a special master to assist in resolving a discovery dispute.

## Rule 18.  Summary Disposition of a Claim or Issue

(a)   The Arbitrator shall decide a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the request.

(b)   JAMS shall facilitate the Parties' agreement on a briefing schedule and record for the Motion. If no agreement is reached, the Arbitrator shall set the briefing and Hearing schedule and contents of the record.

## Rule 19.  Scheduling and Location of Hearing

(a)   The Arbitrator, after consulting with the Parties that have appeared, shall determine the date, time and location of the Hearing. The Arbitrator and the Parties shall attempt to schedule consecutive Hearing days if more than one day is necessary.

(b)   If a Party has failed to answer a claim or has otherwise failed to participate in the arbitration process, the Arbitrator may set the Hearing without consulting with that Party. The non-participating Party shall be served with a Notice of Hearing at least thirty (30) calendar days prior to the scheduled date unless the law of the relevant jurisdiction allows for or the Parties have agreed to shorter notice.

## Rule 20.  Pre-Hearing Submissions

(a)   Subject to any schedule adopted in the Preliminary Conference (Rule 16), at least fourteen (14) calendar days before the Arbitration Hearing, the Parties shall exchange a list of the witnesses they intend to call, including any experts, a short description of the anticipated testimony of each such witness, an estimate of the length of the witness's direct testimony, and a list of exhibits. In addition, at least fourteen (14) calendar days before the Arbitration Hearing, the Parties shall identify all exhibits intended to be used at the Hearing and exchange copies of such exhibits to the extent that any such exhibit has not been previously exchanged. The Parties should pre-mark exhibits and shall attempt themselves to resolve any disputes regarding the admissibility of exhibits prior to the Hearing. The list of witnesses, with the description and estimate of the length of their testimony and the copies of all exhibits that the Parties intend to use at the Hearing, in pre-marked form, should also be provided to JAMS for transmission to the Arbitrator, whether or not the Parties have stipulated to the admissibility of all such exhibits.

(b)   The Arbitrator may require that each Party submit concise written statements of position, including summaries of the facts and evidence a Party intends to present, discussion of the applicable law and the basis for the requested Award or denial of relief sought. The statements, which may be in the form of a letter, shall be filed with JAMS and served upon the other Parties, at least seven (7) calendar days before the Hearing date. Rebuttal statements or other pre-Hearing written submissions may be permitted or required at the discretion of the Arbitrator.

JAMS Comprehensive Arbitration Rules & Procedures





### Rule 21. Securing Witnesses and Documents for the Arbitration Hearing

At the written request of another Party, all other Parties shall produce for the Arbitration Hearing all specified witnesses in their employ or under their control without need of subpoena. The Arbitrator may issue subpoenas for the attendance of witnesses or the production of documents. Pre-issued subpoenas may be used in jurisdictions which permit them. In the event a Party or a subpoenaed person objects to the production of a witness or other evidence, the Party may file an objection with the Arbitrator, who will promptly rule on the objection, weighing both the burden on the producing Party and the need of the proponent for the witness or other evidence.

### Rule 22. The Arbitration Hearing

(a)   The Arbitrator will ordinarily conduct the Arbitration Hearing in the manner set forth in these Rules. The Arbitrator may vary these procedures if it is determined reasonable and appropriate to do so.

(b)   The Arbitrator shall determine the order of proof, which will generally be similar to that of a court trial.

(c)   The Arbitrator shall require witnesses to testify under oath if requested by any Party, or otherwise in the discretion of the Arbitrator.

(d)   Strict conformity to the rules of evidence is not required, except that the Arbitrator shall apply applicable law relating to privileges and work product. The Arbitrator shall consider evidence that he or she finds relevant and material to the dispute, giving the evidence such weight as is appropriate. The Arbitrator may be guided in that determination by principles contained in the Federal Rules of Evidence or any other applicable rules of evidence. The Arbitrator may limit testimony to exclude evidence that would be immaterial or unduly repetitive, provided that all Parties are afforded the opportunity to present material and relevant evidence.

(e)   The Arbitrator shall receive and consider relevant deposition testimony recorded by transcript or videotape, provided that the other Parties have had the opportunity to attend and cross-examine. The Arbitrator may in his or her discretion consider witness affidavits or other recorded testimony even if the other Parties have not had the opportunity to cross-examine, but will give that evidence only such weight as the Arbitrator deems appropriate.

(f)   The Parties will not offer as evidence, and the Arbitrator shall neither admit into the record nor consider, prior settlement offers by the Parties or statements or recommendations made by a mediator or other person in connection with efforts to resolve the dispute being arbitrated, except to the extent that applicable law permits the admission of such evidence.

(g)   The Hearing or any portion thereof may be conducted telephonically with the agreement of the Parties or in the discretion of the Arbitrator.

(h)   When the Arbitrator determines that all relevant and material evidence and arguments have been presented, the Arbitrator shall declare the Hearing closed. The Arbitrator may defer the closing of the Hearing until a date agreed upon by the Arbitrator and the Parties, to permit the Parties to submit post-Hearing briefs, which may be in the form of a letter, and/or to make closing arguments. If post-Hearing briefs are to be submitted, or closing arguments are to be made, the Hearing shall be deemed closed upon receipt by the Arbitrator of such briefs or at the conclusion of such closing arguments.

(i)   At any time before the Award is rendered, the Arbitrator may, on his or her own initiative or on application of a Party for good cause shown, re-open the Hearing. If the Hearing is re-opened and the re-opening prevents the rendering of the Award within the time limits specified by these Rules, the time limits will be extended for an appropriate period of time.

(j)   The Arbitrator may proceed with the Hearing in the absence of a Party who, after receiving notice of the Hearing pursuant to Rule 19, fails to attend. The Arbitrator may not render an Award solely on the basis of the

default or absence of the Party, but shall require any Party seeking relief to submit such evidence as the Arbitrator may require for the rendering of an Award. If the Arbitrator reasonably believes that a Party will not attend the Hearing, the Arbitrator may schedule the Hearing as a telephonic Hearing and may receive the evidence necessary to render an Award by affidavit. The notice of Hearing shall specify if it will be in person or telephonic.

(k)   (i) Any Party may arrange for a stenographic or other record to be made of the Hearing and shall inform the other Parties in advance of the Hearing. The requesting Party shall bear the cost of such stenographic record. If all other Parties agree to share the cost of the stenographic record, it shall be made available to the Arbitrator and may be used in the proceeding.

(ii)   If there is no agreement to share the cost of the stenographic record, it may not be provided to the Arbitrator and may not be used in the proceeding unless the Party arranging for the stenographic record either agrees to provide access to the stenographic record at no charge or on terms that are acceptable to the Parties and the reporting service.

(iii)   If the Parties agree to an Optional Arbitration Appeal Procedure (see Rule 34), they shall ensure that a stenographic or other record is made of the Hearing and shall share the cost of that record.

(iv)   The Parties may agree that the cost of the stenographic record shall or shall not be allocated by the Arbitrator in the Award.

## Rule 23. Waiver of Hearing
The Parties may agree to waive the oral Hearing and submit the dispute to the Arbitrator for an Award based on written submissions and other evidence as the Parties may agree.

## Rule 24. The Award
(a)   Absent good cause for an extension, and except as provided in Rule 22(i) or 31(d), the Arbitrator shall render the Award within thirty (30) calendar days after the date of the closing of the Hearing (as defined in Rule 22(h)) or, if a Hearing has been waived, within thirty

(30) calendar days after the receipt by the Arbitrator of all materials specified by the Parties. The Arbitrator shall provide the Award to JAMS for issuance in accordance with this rule.

(b)   Where a panel of Arbitrators has heard the dispute, the decision and Award of a majority of the panel shall constitute the Arbitration Award and shall be binding on the Parties.

(c)   Unless the Parties specify a different standard, in determining the Award the Arbitrator shall be guided by principles of law and equity as applied to the facts found at the Arbitration Hearing. The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including but not limited to specific performance of a contract.

(d)   In addition to the final Award, the Arbitrator may make other decisions, including interim or partial rulings, orders and Awards.

(e)   Interim Measures. The Arbitrator may take whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods. Such interim measures may take the form of an interim Award, and the Arbitrator may require security for the costs of such measures. Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(f)   In any Award, order or ruling, the Arbitrator may also assess Arbitration fees, Arbitrator compensation and expenses if provided by agreement of the Parties, allowed by applicable law or pursuant to Rule 31(c), in favor of any Party.

(g)   The Award will consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. Unless all Parties agree otherwise, the Award shall also contain a concise written statement of the reasons for the Award.



(h) After the Award has been rendered, and provided the Parties have complied with Rule 31, the Award shall be issued by serving copies on the Parties. Service may be made by U.S. Mail. It need not be sent certified or registered.

(i) Within seven (7) calendar days after issuance of the Award, any Party may serve upon the other Parties and on JAMS a request that the Arbitrator correct any computational, typographical or other similar error in an Award (including the reallocation of fees pursuant to Rule 31(c)), or the Arbitrator may sua sponte propose to correct such errors in an Award. A Party opposing such correction shall have seven (7) calendar days in which to file any objection. The Arbitrator may make any necessary and appropriate correction to the Award within fourteen (14) calendar days of receiving a request or seven (7) calendar days after the Arbitrator's proposal to do so. The corrected Award shall be served upon the Parties in the same manner as the Award.

(j) The Award is considered final, for purposes of either an Optional Arbitration Appeal Procedure pursuant to Rule 34 or a judicial proceeding to enforce, modify or vacate the Award pursuant to Rule 25, fourteen (14) calendar days after service is deemed effective if no request for a correction is made, or as of the effective date of service of a corrected Award.

## Rule 25. Enforcement of the Award

Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. or applicable state law.

## Rule 26. Confidentiality and Privacy

(a) JAMS and the Arbitrator shall maintain the confidential nature of the Arbitration proceeding and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision.

(b) The Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information.

(c) Subject to the discretion of the Arbitrator or agreement of the Parties, any person having a direct interest in the Arbitration may attend the Arbitration Hearing. The Arbitrator may exclude any non-Party from any part of a Hearing.

## Rule 27. Waiver

(a) If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship.

(b) If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator.

## Rule 28. Settlement and Consent Award

(a) The Parties may agree, at any stage of the Arbitration process, to submit the case to JAMS for mediation. The JAMS mediator assigned to the case may not be the Arbitrator or a member of the Appeal Panel, unless the Parties so agree pursuant to Rule 28(b).

(b) The Parties may agree to seek the assistance of the Arbitrator in reaching settlement. By their written agreement to submit the matter to the Arbitrator for settlement assistance, the Parties will be deemed to have agreed that the assistance of the Arbitrator in such settlement efforts will not disqualify the Arbitrator from continuing to serve as Arbitrator if settlement is not reached; nor shall such assistance be argued to a reviewing court as the basis for vacating or modifying an Award.

(c) If, at any stage of the Arbitration process, all Parties agree upon a settlement of the issues in dispute and request the Arbitrator to embody the agreement in a Consent Award, the Arbitrator shall comply with such request unless the Arbitrator believes the terms of the agreement are illegal or undermine the integ-



rity of the Arbitration process. If the Arbitrator is concerned about the possible consequences of the proposed Consent Award, he or she shall inform the Parties of that concern and may request additional specific information from the Parties regarding the proposed Consent Award. The Arbitrator may refuse to enter the proposed Consent Award and may withdraw from the case.

## Rule 29. Sanctions

The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules. These sanctions may include, but are not limited to, assessment of costs, exclusion of certain evidence, or in extreme cases ruling on an issue submitted to Arbitration adversely to the Party who has failed to comply.

## Rule 30. Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability

(a)   The Parties may not call the Arbitrator, the Case Manager or any other JAMS employee or agent as a witness or as an expert in any pending or subsequent litigation or other proceeding involving the Parties and relating to the dispute that is the subject of the Arbitration. The Arbitrator, Case Manager and other JAMS employees and agents are also incompetent to testify as witnesses or experts in any such proceeding.

(b)   The Parties shall defend and/or pay the cost (including any attorneys' fees) of defending the Arbitrator, Case Manager and/or JAMS from any subpoenas from outside Parties arising from the Arbitration.

(c)   The Parties agree that neither the Arbitrator, Case Manager nor JAMS is a necessary Party in any litigation or other proceeding relating to the Arbitration or the subject matter of the Arbitration, and neither the Arbitrator, Case Manager nor JAMS, including its employees or agents, shall be liable to any Party for any act or omission in connection with any Arbitration conducted under these Rules, including but not limited to any disqualification of or recusal by the Arbitrator.

## Rule 31. Fees

(a)   Each Party shall pay its pro-rata share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the Parties agree on a different allocation of fees and expenses. JAMS agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration.  The non-payment of fees may result in an administrative suspension of the case in accordance with Rule 6(c).

(b)   JAMS requires that the Parties deposit the fees and expenses for the Arbitration prior to the Hearing and may preclude a Party that has failed to deposit its pro-rata or agreed-upon share of the fees and expenses from offering evidence of any affirmative claim at the Hearing. JAMS may waive the deposit requirement upon a showing of good cause.

(c)   The Parties are jointly and severally liable for the payment of the fees and expenses of JAMS. In the event that one Party has paid more than its share of the fees, the Arbitrator may award against any other Party any costs or fees that such Party owes with respect to the Arbitration.

(d)   Entities whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of JAMS assessment of fees. JAMS shall determine whether the interests between entities are adverse for purpose of fees, considering such factors as whether the entities are represented by the same attorney and whether the entities are presenting joint or separate positions at the Arbitration.

## Rule 32. Bracketed (or High-Low) Arbitration Option

(a)   At any time before the issuance of the Arbitration Award, the Parties may agree, in writing, on minimum and maximum amounts of damages that may be awarded on each claim or on all claims in the aggregate. The Parties shall promptly notify JAMS and provide to JAMS a copy of their written agreement setting forth the agreed-upon maximum and minimum amounts.

JAMS Comprehensive Arbitration Rules & Procedures

JAMS Comprehensive Arbitration Rules & Procedures

(b) JAMS shall not inform the Arbitrator of the agreement to proceed with this option or of the agreed-upon minimum and maximum levels without the consent of the Parties.

(c) The Arbitrator shall render the Award in accordance with Rule 24.

(d) In the event that the Award of the Arbitrator is in between the agreed-upon minimum and maximum amounts, the Award shall become final as is. In the event that the Award is below the agreed-upon minimum amount, the final Award issued shall be corrected to reflect the agreed-upon minimum amount. In the event that the Award is above the agreed-upon maximum amount, the final Award issued shall be corrected to reflect the agreed-upon maximum amount.

## Rule 33. Final Offer (or Baseball) Arbitration Option

(a) Upon agreement of the Parties to use the option set forth in this Rule, at least seven (7) calendar days before the Arbitration Hearing, the Parties shall exchange and provide to JAMS written proposals for the amount of money damages they would offer or demand, as applicable, and that they believe to be appropriate based on the standard set forth in Rule 24 (c). JAMS shall promptly provide a copy of the Parties' proposals to the Arbitrator, unless the Parties agree that they should not be provided to the Arbitrator. At any time prior to the close of the Arbitration Hearing, the Parties may exchange revised written proposals or demands, which shall supersede all prior propos-

als. The revised written proposals shall be provided to JAMS, which shall promptly provide them to the Arbitrator, unless the Parties agree otherwise.

(b) If the Arbitrator has been informed of the written proposals, in rendering the Award the Arbitrator shall choose between the Parties' last proposals, selecting the proposal that the Arbitrator finds most reasonable and appropriate in light of the standard set forth in Rule 24(c). This provision modifies Rule 24(g) in that no written statement of reasons shall accompany the Award.

(c) If the Arbitrator has not been informed of the written proposals, the Arbitrator shall render the Award as if pursuant to Rule 24, except that the Award shall thereafter be corrected to conform to the closest of the last proposals, and the closest of the last proposals will become the Award.

(d) Other than as provided herein, the provisions of Rule 24 shall be applicable.

## Rule 34. Optional Arbitration Appeal Procedure

At any time before the Award becomes final pursuant to Rule 24, the Parties may agree to the JAMS Optional Arbitration Appeal Procedure. All Parties must agree in writing for such procedure to be effective. Once a Party has agreed to the Optional Arbitration Appeal Procedure, it cannot unilaterally withdraw from it, unless it withdraws, pursuant to Rule 13, from the Arbitration.



THE RESOLUTION EXPERTS®

# Questions and Answers
# Pertaining to Fannie Mae's
# Dispute Resolution Policy
# Effective March 16, 1998

**Q.** *Why was the Dispute Resolution Policy (the "Policy") developed?*

**A.** In order to identify the most fair, efficient, and effective alternative to potentially costly and time-consuming litigation in court, the Office of Corporate Justice (OCJ) conducted extensive research and studied the dispute resolution policies of many other companies. We learned that, since it is typically faster to arbitrate employment disputes than to litigate them in court, the company and employees can save on legal fees and other expenses. In addition, the employees involved in the dispute can more quickly return to a cooperative and productive relationship with each other at work. As a result, we determined that arbitration would be a valuable tool for Fannie Mae and its employees.

**Q.** *What is arbitration?*

**A.** Arbitration is a process in which a claim is presented to a neutral person, called an arbitrator, instead of to a judge or jury in court. The arbitrator makes a decision on the claim after both sides present their evidence and arguments at an arbitration hearing. The hearing is much less formal than a court trial; however, the arbitrator is able to award the same relief as in court.

**Q.** *How is arbitration different from mediation?*

**A.** In arbitration, an arbitrator acts as both judge and jury, and applies the law in deciding who wins the dispute and in awarding relief. In mediation, the parties work together, with the help of a mediator, in an effort to reach an agreement. Unlike an arbitrator, a mediator has no power to decide the dispute in favor of either party, nor to award any relief. Rather, the mediator helps the parties state their positions, and identify and communicate ideas for reaching agreement. Under the Policy, arbitration will be required before an employee can bring a lawsuit in court. However, the Policy will not prevent the possibility of using mediation in an effort to resolve the dispute before an arbitrator or court resolves it for the parties.

**Q.** *Under the Policy, will I lose the right to go to court?*

**A.** No. The Policy simply requires that you use non-binding arbitration first. Because it is "non-binding," if you are not satisfied with the arbitrator's decision, you may reject it and bring suit in court. Fannie Mae, however, will not have the option of rejecting the decision, so if you do not reject the arbitrator's decision, that decision becomes the final resolution of the dispute.



**Q.**  *Will the arbitrator be able to award the same amount of money damages or other relief that a judge or jury could in court?*

**A.**  Yes.  The arbitrator may award the same type and amount of damages and relief that would be available in court on the same claim(s), including attorneys' fees and expenses.

**Q.**  *Who will administer arbitrations under the Policy?*

**A.**  JAMS/ENDISPUTE (JAMS), a nationally-recognized dispute resolution service, will administer arbitrations under the Policy.  JAMS was selected because of its nationwide presence, the quality and experience of its arbitrators, the fairness of its administrative rules, and the types of services it provides.  Formed in 1977, JAMS maintains a panel of arbitrators who are primarily attorneys or retired judges.

**Q.**  *What will it cost me to arbitrate?*

**A.**  Fannie Mae will pay all arbitration filing and case management fees charged by JAMS.  In addition, Fannie Mae will pay JAMS the arbitrator's fee, and JAMS will pay the arbitrator directly, in order to protect the arbitrator's neutrality.  However, if you use a lawyer or other representative for the arbitration, you must pay the fees and expenses of that lawyer or representative.  You also must pay any costs of your own gathering of evidence or calling of expert or outside witnesses.

**Q.**  *Who chooses the arbitrator?*

**A.**  The employee and Fannie Mae will both choose an arbitrator through a process described in the Policy.  JAMS will send an identical list of arbitrators to the employee and Fannie Mae with a biography or resume for each person on the list.  Once both parties have eliminated arbitrator candidates and ranked the remaining names on the list, JAMS will choose the arbitrator, according to the rankings.

**Q.**  *What qualifications will the arbitrator have?*

**A.**  Arbitrators will be chosen from the JAMS employment panel, which includes many lawyers and retired judges.  In addition, the Policy requires that all arbitrator candidates have certain minimum qualifications, such as substantial experience in employment law.

**Q.**  *May I have any complaint arbitrated?*

**A.**  No.  The Policy applies only to claims that relate to employment or termination, and involve certain rights protected by law, such as the right to be free from discrimination or harassment.  The Office of Corporate Justice also will continue to handle these types of claims internally, as well as claims regarding Fannie Mae's Code of Business Conduct and the company's policies and practices.

2

**Q.**   ***Must I submit a complaint to the Office of Corporate Justice before requesting arbitration?***

**A.**   In most cases, the arbitration process will be used only as an alternative for employees who are not satisfied with the results of an OCJ investigation or mediation. However, filing a complaint with the OCJ before requesting arbitration is not required by the Policy. The OCJ will continue to offer all employees its dispute resolution services, and most claims will be effectively resolved without arbitration. In addition, in any circumstance where an employee submits a claim to arbitration without first filing a complaint with the OCJ, the OCJ still may conduct an investigation, before or during the arbitration proceedings.

**Q.**   ***Will I receive the arbitration decision in writing?***

**A.**   Yes, the arbitrator will issue to Fannie Mae and to you a written decision that includes a statement of the reasons supporting it. However, the decision and all other aspects of the arbitration are required to be kept confidential by both parties, except in the limited circumstances identified in the Policy.

**Q.**   ***Can I submit the arbitration decision as evidence in court if I reject it and file a lawsuit?***

**A.**   Yes. You (or Fannie Mae) may use the arbitration decision in a lawsuit brought on the same facts.

**Q.**   ***When will the Policy take effect and will it cover a complaint I have now?***

**A.**   The Policy takes effect on March 16, 1998. So, on or after that date, employees must arbitrate claims before filing suit, even if the facts or circumstances on which the claim is based occurred before then.

**Q.**   ***Do I have to arbitrate my complaint before filing a charge with the Equal Employment Opportunity Commission?***

**A.**   No. The Policy does not change or affect an employee's right to file a charge or complaint, at any time, with the Equal Employment Opportunity Commission, or any other administrative or fair employment rights agency. Nor does the Policy prevent an employee from assisting or cooperating with any such agency's investigations or proceedings. However, if an employee has an administrative charge or complaint pending while arbitrating it under the Policy, Fannie Mae will request that the agency suspend action on it while the matter is arbitrated. Whether or not the agency agrees to suspend action, arbitration under the Policy will go forward. Once an arbitration decision is issued, the employee will be free to decide whether to reject it, but if the employee does not reject it as provided in the Policy, he or she will be bound by it and may not receive any award resulting from the administrative charge or complaint nor from any lawsuit brought by the agency on the employee's behalf.

**Q.** *Will I be able to have a lawyer represent me in arbitration?*
**A.** Yes. You may have an attorney or other representative, at your own expense, present during any phase of arbitration.

**Q.** *Will I lose pay or benefits while attending the arbitration hearing on my claim?*
**A.** No. The company will excuse from their business duties, without loss of pay or benefits, all employees (including the employee who has requested arbitration) who are needed for the arbitration hearing.

**Q.** *Who is covered by the Policy?*
**A.** All Fannie Mae employees and managers, in every level/Job Family and position from Executive Vice President down, are covered by the Policy and required to arbitrate before bringing suit in court.

**Q.** *Can I reject only a portion of an arbitration decision and bring suit in court over the rest of it?*
**A.** No. You may reject only the entire arbitration decision.

**Q.** *Can Fannie Mae reject an arbitration decision?*
**A.** No. The Policy gives this right only to the employee.

**Q.** *Once a claim is submitted to arbitration, are the parties still free to try and resolve it through other means?*
**A.** Yes. For example, the Policy states that Fannie Mae and the employee may agree to mediate the dispute at any time before the arbitration hearing is held.

**Q.** *Where can I get more information about arbitration?*
**A.** JAMS provides a "hot-line" number, 1-800-219-9122, for Fannie Mae employees to call, Mondays through Fridays from 9:00 a.m. - 6:00 p.m. (E.S.T.), with any questions about arbitration. Employees also are welcome to call the OCJ, (202) 752-7951, for information during working hours. In addition, the OCJ will answer questions posted on its cc:Mail bulletin board, "OCJ." All employee requests for anonymity will be honored.

**Q.** *Is the Dispute Resolution Policy a contract?*
**A.** Yes. The Policy binds Fannie Mae and all persons who started or continued their Fannie Mae employment on or after March 16, 1998. This means that if you start or continue to work for Fannie Mae on or after that date, you are accepting the Policy and agreeing to be bound by it.

**Q.** *Where will arbitration hearings be held?*
**A.** JAMS will decide on a location for the hearing, taking into account the convenience and resources of Fannie Mae and the employee.



**Q.** *Does the new Policy change where I should go internally if I have a complaint or dispute?*

**A.** No. You still are encouraged to resolve disputes through your chain of command. If you choose not to resolve the dispute through the chain of command, or if you are not satisfied with the attempted resolution, you can still can go directly to the Office of Corporate Justice, HR Account Team, or HR Regional Director. The Policy does not change your continuing obligation to internally report alleged misconduct described in the Code of Business Conduct.

**Q.** *Who decides if my claim is covered under the Policy?*

**A.** The arbitrator. The Policy covers only claims involving rights protected by law, so the arbitrator will look to the applicable law to decide if a claim is covered.

**Q.** *What can I do if I don't like or agree with the arbitrator's decision?*

**A.** You may, within 30 calendar days of the date of the decision, reject it by sending a completed "Rejection of Arbitration Award" form to JAMS and the OCJ. After this is done, you may bring suit on the claim in court at your own expense.

**Q.** *Will the Policy still apply to me if I am terminated or laid off from employment with Fannie Mae?*

**A.** The Policy will not apply to employees who were terminated or laid off from employment with Fannie Mae prior to March 16, 1998. The Policy will apply to all persons who are employed by Fannie Mae on or after March 16, 1998.

**Q.** *What types of documents can be obtained in the exchange of information?*

**A.** A party to the arbitration may obtain documents that are not protected by privilege (such as attorney-client privilege) and that contain information relevant to the claim.

**Q.** *What happens if I file a lawsuit against Fannie Mae, involving a claim covered by the Policy, before arbitrating it?*

**A.** Fannie Mae will ask the court to order you to arbitrate the claim under the Policy.

**Q.** *How will the OCJ be involved in the arbitration process?*

**A.** The OCJ will answer employees' questions about arbitration and the Policy, and make appropriate forms available for requesting arbitration and for rejecting an arbitration decision.

5