UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| MAXWELL J. KIMPSON, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 1:06-cv-00018 (RWR) |
| FANNIE MAE, | : |
| Defendant. | : |

**FANNIE MAE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS CONSOLIDATED MOTION TO VACATE DEFAULT AND OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT**

Pursuant to LCvR 7 and Fed.R.Civ.P. 55(c), Defendant Fannie Mae, by and through undersigned counsel, submits this Memorandum of Points and Authorities in Support of its Consolidated Motion to Vacate Default and Opposition to Plaintiff's Renewed Motion for Default Judgment ("Consolidated Motion"). For the reasons discussed below, good cause exists to vacate the Default entered by the Clerk against Fannie Mae on March 3, 2006, to deny Plaintiff's Renewed Motion to for Default Judgment, and to allow this dispute to proceed to a resolution on the merits.[1]

**INTRODUCTION AND FACTUAL BACKGROUND[2]**

Fannie Mae is a private, federally-chartered, shareholder-owned corporation, with its principal place of business in the District of Columbia. Fannie Mae employed Plaintiff Maxwell

---

[1] Even thought Fannie Mae has already filed a Motion to Dismiss under Fed.R.Civ.P. 12(b)(1), consistent with the requirements of LCvR 7(g) Fannie Mae is filing a Verified Answer along with this Consolidated Motion. By filing this Verified Answer Fannie Mae does not surrender or waive any of the arguments advanced in the Motion to Dismiss, especially that part of the Motion to Dismiss which seeks to compel arbitration of Plaintiff's claims.

[2] Fannie Mae also incorporates by reference the arguments advanced in Fannie Mae's Motion for Enlargement of Time, which was filed with the Court on March 1, 2006.

1

Kimpson ("Plaintiff" or "Kimpson") – on an at-will basis – to work as a full-time regular employee from on or about August 28, 2000, to April 5, 2005. Complaint ¶¶ 9 and 79.

After his termination of employment, Kimpson asserted that he was improperly terminated because Kimpson complained to his supervisors about accounting irregularities at Fannie Mae during his employment. Complaint at ¶¶ 86-98; Declaration of Madonna A. McGwin at ¶3 (hereinafter referred to as "McGwin Dec. at ¶__")(the McGwin Declaration is attached hereto as Exhibit A). Pursuant to the regulatory scheme enacted under The Sarbanes-Oxley Act of 2002, 18 U.S.C. §1512A (hereinafter "Sarbanes-Oxley"), on or about June 27, 2005, Kimpson filed a complaint with the Department of Labor, Occupational Safety and Health Administration challenging his termination. When the Secretary of Labor failed to issue a final decision within 180 days of filing of the administrative complaint as required under Sarbanes-Oxley, Kimpson was entitled to initiate an action in this Court. Complaint at ¶¶ 3-6. The 180 day time period expired on or about December 27, 2005.

On or before December 23, 2005, Madonna A. McGwin ("Ms. McGwin"), Associate General Counsel, Fannie Mae, received a copy of a notice Kimpson filed with the Department of Labor which stated that Kimpson was preparing a suit to be filed in United States District Court. McGwin Dec. at ¶5. In response, Ms. McGwin – the in-house attorney at Fannie Mae responsible for the Kimpson matter – wrote to counsel for Kimpson and advised them of Kimpson's obligation to arbitrate any dispute arising from his employment at Fannie Mae pursuant to the terms of his employment. See McGwin Dec. at ¶5, and Exhibit 1 to McGwin Dec. Shortly thereafter in January, 2006, counsel for Kimpson contacted Ms. McGwin and inquired as to who was authorized to receive service of a Complaint addressed to Fannie Mae. On January 12, 2006, Ms. McGwin informed counsel for Kimpson that Jodie Kelley, Esq., Vice-

President and Deputy General Counsel, was authorized to accept service on behalf of Fannie Mae. See McGwin Dec. at ¶5, and Exhibit 2 to McGwin Dec.

Plaintiff had filed this action on January 6, 2006. According to the Return of Service/Affidavit filed by Plaintiff's counsel, the Summons and Complaint were served on Fannie Mae by certified mail addressed to Jodie Kelley, Esq., Vice-President and General Counsel, Fannie Mae, on January 20, 2006.[3] Assuming that both the date and manner of service are accurate, Fannie Mae's time to Answer or otherwise respond to Plaintiff's Complaint would have been on or before February 9, 2006.

In January and early February, following the conversation with Plaintiff's counsel regarding the identity of the individual at Fannie Mae who should receive service of process, Ms. McGwin had several communications with Ms. Kelley concerning the anticipated arrival of a Summons and Complaint from Plaintiff's counsel. McGwin Dec. at ¶6. In response to these inquiries, Ms. Kelley continually indicated to Ms. McGwin that she had not received any correspondence or pleadings concerning Plaintiff. Id.

Nonetheless, when no Answer or responsive pleading was filed in response to Plaintiff's Complaint, Plaintiff's counsel elected to file a Motion for Default Judgment instead of contacting Ms. McGwin and inquiring as to the status of Fannie Mae's response to Plaintiff's Complaint. Plaintiff's Motion for Default Judgment was filed with the Court on February 16, 2006, and denied by Minute Order on February 24, 2006. According to the certificate of service, the

---

[3] Apparently, Plaintiff elected to serve Fannie Mae by certified mail, return receipt requested, as authorized under D.C. local law – see SCR-Civil 4(c)(3), and as permitted under Fed.R.Civ.P. 4(e)(1). While Fannie Mae does not concede that Plaintiff made proper service on an agent authorized to accept service on behalf of Fannie Mae, or that Plaintiff complied with the requirements of SCR-Civil 4(c)(3) and Fed.R.Civ.P. 4, Fannie Mae will not contest the sufficiency of service of process in this matter.

3

Motion for Default Judgment was also served by mail on Ms. Kelley, even though Ms. McGwin had been the active in-house counsel at Fannie Mae responsible for the Kimpson matter.

On February 24, 2006, Ms. Kelley received a copy of the Motion for Default Judgment noted above. McGwin Dec. at ¶8. Upon review of the Motion for Default Judgment and the attached exhibits, particularly the signed return receipt, in-house counsel for Fannie Mae attempted to determine whether the complaint had, in fact, been delivered to Fannie Mae. Id. Fannie Mae personnel were able to locate a copy of the Summons and Complaint, but could not locate the envelope in which the may have been delivered to Fannie Mae.[4] Id.

After reviewing the Motion for Default Judgment, Ms. McGwin contacted counsel for Plaintiff. Ms. McGwin informed counsel for Plaintiff that both she and Ms. Kelley had just learned that day of the Motion for Default Judgment. McGwin Dec. at ¶11. Ms. McGwin offered to accept service if Plaintiff would withdraw the Motion for Default Judgment and allow Fannie Mae additional time to file an Answer or otherwise respond to Plaintiff's Complaint. Id. Although Plaintiff's counsel indicated that the Court may have already denied Plaintiff's Motion for Entry of Default Judgment, Plaintiff's counsel refused to withdraw the Motion for Entry of Default Judgment and indicted that Plaintiff would continue to seek a default. Id.

On Wednesday, March 1, 2006, undersigned counsel promptly filed a Motion for Enlargement of Time in which to Answer or otherwise respond to Plaintiff's Complaint and, two days later, on March 3, 2006, filed a Motion to Dismiss and Compel Arbitration.

---

[4] While the Summons and Complaint were located in the Fannie Mae law department, no envelopes were located for either the Summons and Complaint or the Motion for Default Judgment which could provide any further information as to when these documents arrived at Fannie Mae. Nonetheless, it appears that the Summons and Complaint were received by Fannie Mae, and Fannie Mae's failure to timely respond to Plaintiff's Complaint was an inadvertent administrative oversight. While Fannie Mae has internal control procedures which allow Fannie Mae to properly track items received through service of process, it appears that this incident has identified a potential flaw as to those limited circumstances when service can be accomplished through mailing without a separate acknowledgment of service. Fannie Mae is taking steps to correct its administrative policies to make sure that such an incident does not repeat itself in the future. McGwin Dec. at ¶¶9-10.

4

Notwithstanding the pending Motion for Enlargement, on March 3, 2006, the Clerk entered a Default against Fannie Mae. On March 6, 2006, Plaintiff filed a Renewed Motion for Default Judgment, and asked the Court to enter judgment in Plaintiff's favor in an amount in excess of $3,200,000.00.

## LEGAL ARGUMENT

The courts in the District of Columbia Circuit follow the long standing policy that disputes are to be resolved by a trial on the merits, and not by the disfavored remedy of default. Kliegel v. Key West & Caribbean Trading Company; 627 F.2d. 372, 373-4 (D.C. Cir. 1980); Jackson v. Beech, 636 F.2d. 831, 836 (D.C. Cir. 1980); Baade v. Price, 175 F.R.D. 403, 405-6 (D.D.C. 1997); Biton v. Palestine Interim Self Government Authority, 233 F.Supp. 2d. 31, 33-4 (D.D.C. 2002); Capital Yacht Club v. Vessel Aviva, 228 F.R.D. 389, 393-4 (D.D.C. 2005); Flynn v. Pulaski Construction Co., Inc., 2006 WL 47304 (D.D.C. 2006)(cases all endorsing policy of resolving disputes on merits in lieu of defaults).

Under Fed.R.Civ.P. 55(c), "[f]or good cause shown the Court may set aside an entry of default." Good cause clearly exists in this situation, as Fannie Mae's delay in responding to the Complaint was inadvertent, Plaintiff will not be prejudiced by the delay, and Fannie Mae has meritorious defenses to the claims asserted by Plaintiff. Thus, the Default entered by the Clerk should be vacated, and Plaintiff should be directed to respond to Fannie Mae's Motion to Dismiss. In the alternative, if the Court is unwilling to vacate the Default, it should deny the Motion for Default Judgment and set a hearing on Plaintiff's damage claims.

**1.     The Court Should Vacate The Default Entered By The Clerk On March 3, 2006.**

Courts apply a three part test in deciding whether a default should be vacated. One, was the default willful. Two, would the plaintiff be prejudiced if the default was set aside. Three,

5

does the defendant have a meritorious defense to plaintiff's claims.  Kliegel v. Key West & Carribean Trading Company; 627 F.2d. at 373-4; Jackson v. Beech, 636 F.2d. at 836; Baade v. Price, 175 F.R.D. at 405-6. While discretion lies with the trial court in deciding whether or not to vacate a default, all doubts are to be resolved in favor of the moving party, in furtherance of the strong federal policy which favors resolving disputes on the merits.  Biton v. Palestine Interim Self Government Authority, 233 F.Supp. 2d. at 33-4 (D.D.C. 2002), citing Jackson v. Beech, 636 F.2d at 836. Applying this three part test, it is clear that the Default entered by the Clerk should be vacated. Fannie Mae's inadvertent failure to respond to the Summons and Complaint within 20 days of January 20, 2006, was simply the result of administrative problems within Fannie Mae's headquarters.  While the Summons and Complaint were, apparently, received at Fannie Mae's headquarters, those documents did not make it to the personnel in the Fannie Mae law department responsible for logging in and tracking responses to summons and other forms of legal process, nor to the in-house counsel – Ms. McGwin – responsible for this matter. Once Fannie Mae personnel figured out this omission on February 24, 2006, they moved expeditiously in contacting Plaintiff's counsel, by contacting the clerk and, eventually, retaining outside counsel to file the appropriate pleadings.

Fannie Mae's conduct in this case does not rise to the level of willfulness necessary to sustain a default under Fed.R.Civ.P. 55(c). See International Painters and Allied Trades Union and Industry Pension Fund v. H.W. Ellis, 288 F.Supp. 2d 22, 26 (D.D.C. 2003)("boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable"). Here, while the record suggests that a copy of the Summons and Complaint may have been received and signed for by an employee in Fannie Mae's mailroom,

6

those documents never got to the appropriate individual within the Fannie Mae legal department who knew how to timely respond. Whether described as accident or administrative oversight, Fannie Mae's conduct cannot be described as willful. See, e.g., Wendt v. Pratt, 154 F.R.D. 229, 230 (D.Minn. 1994)(14 day delay in filing Answer due to administrative problems within insurance company does not justify entry of default); see also Schoenlein v. Option One Mortgage, 312 B.R. 600, 604 (B.A.P. 6th Cir. 2002)(mere negligence insufficient to sustain default in face of request to vacate under Fed.R.Civ.P. 55(c)).

In contrast, the decision in Flynn v. Pulaski, supra, is instructive. In Flynn, the Court noted that willfulness can be established when a defendant fails to respond in light of a demand or warning by Plaintiff's counsel as to the entry of default. 2006 WL 47304 at *8. In that dispute, after the Defendant had been served, there were discussions between Plaintiff and Defendant in which Plaintiff clearly indicated it would move for an entry of default if no answer or responsive pleading was filed by a specific date. The court found that the Defendant's failure to comply with this deadline (or to respond to the Complaint within 6 months of filing) constituted willful behavior. In this proceeding, however, no such demand from Plaintiff's counsel was ever made. As noted above, Ms. McGwin had at least two communications with Plaintiff's counsel concerning the anticipated filing and service of Kimpson's Complaint (or a Demand for Arbitration), yet Plaintiff's counsel chose not to contact Ms. McGwin after the 20 day time period had run after service of Plaintiff's Complaint. McGwin Dec. at ¶¶7-8, see also Momah v. Albert Einstein Medical Center, 161 F.R.D. 304, 308 (E.D.Pa. 1995)(while attorney's failure to file timely response to amended complaint may have been neglectful it did not rise to level of willfulness necessary to sustain default); Accu-weather, Inc. v. Reuters Ltd., 779 F.Supp.

801, 804 (M.D.Pa. 1991)(oversight by counsel in failing to file answer does not constitute culpable or willful conduct justifying entry of default and default judgment).

Applying the second prong of the test, Plaintiff cannot point to any prejudice by the relief sought by this Consolidated Motion. The slight delay created by Fannie Mae's failure to answer or otherwise respond by mid-February will not adversely affect Plaintiff's ability to fairly prosecute his claims. No discovery has occurred, nor a scheduling order put in place, which requires any change or adjustment. A slight delay, by itself, does not establish prejudice. Capital Yacht Club v. Vessel Aviva, 228 F.R.D. at 393-4; Corso v. First Frontier Holdings, Inc., 205 F.R.D. 420, 421 (S.D.N.Y. 2001), citing Enron Oil Corp. v. Diakuhara, 10 F.3rd 90, 95-56 (2nd Cir. 1993)(also noting the Second Circuit's preference for resolution of disputes on the merits). This matter is ready to proceed to a resolution on the merits, and a brief delay will not adversely impact Plaintiff or his ability to prosecute his claim.

Finally, Fannie Mae has a bona fide defense to the claims asserted by Plaintiff. As reflected by the verified Answer submitted contemporaneously with this Motion to Vacate, Fannie Mae has asserted, among others, the affirmative defenses of failure to arbitrate, breach of contract, waiver, estoppel, and failure to state a claim upon which relief can be granted. More importantly, Fannie Mae has also asserted strong factual challenges to the allegations contained within Plaintiff's Complaint. Fannie Mae's repudiation of the factual allegations in Plaintiff's Complaint is buttressed by the fact that the same issues raised in Plaintiff's Complaint were extensively investigated by an investigator for the U.S. Department of Labor (charged with the

8

authority to conduct such investigations) and such investigator recommended to the Department of Labor that the administrative complaint filed by Plaintiff be dismissed.[5]

Given the existence of bona fide legal and factual defenses to Plaintiff's Complaint, the Default should be vacated. Under Fed.R.Civ.P. 55(c) the Court is not to evaluate the overall strength or validity of these defenses, but simply to determine whether a colorable claim can be made that such defenses will defeat Plaintiff's claims at trial. Keegel, 627 F.2d at 374: Biton, 233 F. Supp. at 33. The defenses asserted by Fannie Mae clearly satisfy the threshold required by this element of the analysis required in response to a motion brought under Fed.R.Civ.P. 55(c).

Thus, applying the three part test employed by Courts in this Circuit, and considering all facts in favor of the moving party as required, it is clear that the Default entered by the Clerk on March 3, 2006 should be vacated.

**2.    The Court Should Deny Plaintiff's Renewed Motion For Default Judgment.**

Even if this Court were to deny the Motion to Vacate the Default, it would be wholly inappropriate to simply enter judgment against Fannie Mae in an amount, as calculated by Plaintiff, in excess of $3,200,000.00. The majority of this claimed amount - $3,000,000.00 – is for compensation for pain, suffering and embarrassment allegedly suffered by Plaintiff. While a court can enter judgment on a fixed sum solely based upon documents or affidavits, such an award is inappropriate for a claim of pain and suffering. Hutton v. Fisher, 359 F.2d 913, 916 (3rd. Cir. 1965)(default should not be entered absent hearing on damage claims); Transatlantic Marine Claims Agency v. Ace Shipping Corp., 109 F.3d 105 (2nd Cir. 1997)(court still obligated to hold a hearing to ensure that damages granted on default judgment are appropriate, and could

---

[5] While the DOL investigator reached the conclusion that Plaintiff's claims lacked merit, such decision was not turned into a final agency action within the 180 day time period required by Sarbanes-Oxley. The lack of a determination within that time period is what led to the filing of Plaintiff's Complaint.

9

not simply rely upon statement by Plaintiff); Wing v. East River Chinese Restaurant, 884 F.Supp. 662, 669 (E.D.N.Y. 1995)(unless damages are certain court must make independent determination of amount to be awarded after entry of default). Thus, even if the Court upholds the Default entered by the Clerk, a hearing should be set to determine the scope of any damages claimed by Plaintiff.

## CONCLUSION

For the reasons discussed above, Fannie Mae respectfully requests that this Court enter the attached Order vacating the Default entered by the Clerk and requiring Plaintiff to submit a response to Defendant's Motion to Compel Arbitration.

Dated:  March 10, 2006                    Respectfully submitted,

By: _____/s/_ Philip T. Evans_____
Philip T. Evans (D.C. Bar No. 441735)
HOLLAND & KNIGHT LLP
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C.  20006
Tel: (202) 955-3000/Fax: (202) 955-5564

*Counsel for Fannie Mae*

*Of Counsel:*
Madonna A. McGwin
Associate General Counsel
Fannie Mae
3900 Wisconsin Avenue, N.W.
Washington, D.C.   20016-2892

# 3632538_v1