UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAXWELL J. KIMPSON, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 1:06-cv-00018 (RWR) |
| FANNIE MAE, | : |
| Defendant. | : |

**DECLARATION OF MADONNA A. MCGWIN IN SUPPORT OF FANNIE MAE'S CONSOLIDATED MOTION TO VACATE DEFAULT AND OPPOSITION TO MOTION FOR DEFAULT JUDGMENT**

I, Madonna A. McGwin, being duly sworn, do depose and state as follows:

1. I am over the age of 18 and am competent to give this declaration, which is based upon my personal knowledge and as a result of an investigation I conducted into the matters described below.

2. I am an attorney licensed to practice in the District of Columbia. I am currently employed as an Associate General Counsel in the Law Department of Fannie Mae, and have been employed in that capacity since July 18, 2005. I am the in-house lawyer responsible for defending Fannie Mae against claims brought by Maxwell Kimpson ("Kimpson"): First in a complaint filed with the U.S. Department of Labor, Occupational Safety & Health Administration ("DOL"), which was served on Fannie Mae by DOL in early July 2005; and now in the above-captioned Complaint.

3. Fannie Mae's business records confirm that it terminated the at-will employment relationship it had with Kimpson in April 2005. Although he did not raise the issues alleged in

1

his Complaint while employed by Fannie Mae, Kimpson now asserts that he was improperly terminated because, during his employment, he complained to his supervisors about "accounting irregularities" at Fannie Mae. Fannie Mae has investigated the allegations and found them to be without merit.

4. Under the regulatory scheme created in response to the passage of the Sarbanes-Oxley Act, by letter dated July 1, 2005, DOL notified Fannie Mae that Kimpson had filed a complaint alleging that he was terminated in reprisal for reporting improper accounting practices and fraudulent financial activities to senior management officials in violation of Title VIII, Section 806 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. Section 1514A. Although the DOL investigator completed the investigation, the Secretary of Labor failed to issue a final decision within 180 days of Kimpson's filing of the administrative Complaint as required under Sarbanes-Oxley, therefore, Kimpson was entitled to initiate an action in this Court. Upon information and belief, the 180 day time period expired on or about December 27, 2005.

5. In December 2005, counsel for Kimpson filed a notice with the DOL, with service made to Fannie Mae, indicating Kimpson's intent to file suit in United States District Court. On December 23, 2005, based on Kimpson's stated intent to file his complaint in court, I wrote to Kimpson's counsel and advised them of Kimpson's obligation to arbitrate any dispute arising from his employment at Fannie Mae. See Exhibit 1. I provided Kimpson's counsel with all my contact information both by email and regular mail, as well as information concerning Kimpson's obligation to arbitrate any disputes. Id. Shortly thereafter, in January 2006, Sean Ryan (one of the lawyers working on Kimpson's behalf) called me to inquire as to who was authorized to receive service of a Summons and Complaint addressed to Fannie Mae. On January 12, 2006, I responded to Mr. Ryan by email, informing him that Jodie Kelley, Esq., Vice-President and

Deputy General Counsel, Fannie Mae, was authorized to accept service on behalf of Fannie Mae. See Exhibit 2. I again reminded Kimpson's counsel of Kimpson's obligation to arbitrate his claims. Id.

6. In January and early February, following the conversation with Plaintiff's counsel regarding the identity of the individual at Fannie Mae who should receive service of process, I had several communications with Ms. Kelley concerning the anticipated arrival of a Summons and Complaint from Mr. Kimpson or his counsel. In response to these inquiries, Ms. Kelley continually indicated to me that she had not received any correspondence or pleadings concerning Kimpson.

7. I did not speak with, or hear from, counsel for Kimpson until I called both J. Michael Hannon and Sean Ryan on Friday, February 24, 2006.

8. On February 24, 2006, I called counsel for Kimpson because on that day Ms. Kelley notified me that she had just received a copy of a Motion for Default Judgment. Upon my review of the Motion for Default Judgment and the attached exhibits, particularly the signed return receipt, I, along with other members of the Fannie Mae law department, conducted an investigation to determine whether the Summons and Complaint for this case had, in fact, been delivered to Fannie Mae. Fannie Mae personnel were able to locate a copy of the Complaint and Summons, but could not locate the envelope in which it may have arrived.

9. According to the Motion for Default Judgment, the Summons and Complaint were served on Fannie Mae by certified mail addressed to Jodie Kelley, Esq., Vice-President and General Counsel, Fannie Mae, on January 20, 2006. Apparently, Plaintiff elected to serve Fannie Mae by certified mail, return receipt requested, as authorized under D.C. local law – see SCR-Civil 4(c)(3), as permitted under Fed.R.Civ.P. 4(e)(1). The return receipt was signed by

Jerome Floyd, who I determined is an employee in Fannie Mae's mailroom. I also determined that Mr. Floyd is not an agent authorized to accept service on behalf of Fannie Mae.

10. While the Summons and Complaint were eventually located in the Fannie Mae law department, no envelopes were located for either the Summons and Complaint or the Motion for Default Judgment which could provide any further information as to when these documents actually arrived at Fannie Mae. Nonetheless, it appears that the Summons and Complaint were received by Fannie Mae, and Fannie Mae's failure to timely respond to Plaintiff's Complaint was an inadvertent administrative oversight. While Fannie Mae has internal control procedures which allow Fannie Mae to track items received through service of process, it appears that this incident has identified a potential flaw as to those limited circumstances when service can be accomplished through mailing without any acknowledgement of service (as would be provided for in Fed.R.Civ.P. 4(d)). As a result of this incident, Fannie Mae is taking steps to ensure that this flaw is corrected.

11. After reviewing the Motion for Default Judgment and conducting a brief investigation, I contacted counsel for Plaintiff and informed them that both Ms. Kelley and I had just learned that day of the Motion for Default Judgment. I offered to accept service of the Complaint if Plaintiff would withdraw the Motion for Default Judgment and allow Fannie Mae additional time to file an Answer or otherwise respond to Plaintiff's Complaint. Although Plaintiff's counsel indicated that the Court may have already denied Plaintiff's Motion for Entry of Default Judgment, Plaintiff's counsel refused to withdraw the Motion for Entry of Default Judgment and indicted that Plaintiff would continue to seek a default.

12. Due to the circumstances, including Plaintiff's counsel refusal to consent to an enlargement of time, Fannie Mae determined that it needed the assistance of outside counsel.

Fannie Mae then quickly retained the law firm of Holland & Knight LLP to represent Fannie Mae in this action. Holland & Knight promptly addressed the situation. On Wednesday, March 1, 2006, Holland & Knight filed a Motion for Enlargement of Time in which to Answer or Otherwise Respond to Plaintiff's Complaint and, two days later, on March 3, 2006, it filed a Motion to Dismiss and Compel Arbitration.

13. Having investigated the claims against Fannie Mae made by Kimpson to DOL, which are now re-asserted almost verbatim in this action, I can state without reservation that Fannie Mae's denials of both the factual contentions and characterizations of facts are warranted on the evidence, and, as specifically so identified, are reasonably based on a lack of information or belief. I also know that Fannie Mae fully cooperated with the DOL's investigation of Kimpson's allegations against Fannie Mae. In that regard, after receiving the notice of Kimpson's intent to file suit in federal court, I made an inquiry to the investigator about the status of the DOL's decision. In responding, the investigator confirmed that she had completed her report and had recommended that the case be dismissed.

14. Based on the results of three separate investigations (my own in connection with the DOL complaint, my understanding of the results of DOL's investigation, and the investigation of issues presented by Kimpson in mid-December 2004 – when he was still a Fannie Mae employee – to Fannie Mae's Office of Corporate Justice ("OCJ")[1]), Fannie Mae has

---

[1] OCJ conducted its own separate investigation relating to certain allegations raised by Kimpson during his employment, after which it issued a decision on October 25, 2005. The OCJ decision specifically notes that, while it had reviewed Kimpson's DOL Complaint before issuing the decision, the allegations were different than those it had investigated. OCJ did not investigate any allegations of violations of Sarbanes-Oxley because Kimpson never brought such allegations to the OCJ's attention.

determined that Kimpson's claims are without legal and factual basis, and that Fannie Mae has not breached any obligation it may have or may have had to Kimpson.

Pursuant to LCvR 15.1, I declare under the penalty of perjury that the foregoing statements are true and correct to the best of my understanding, knowledge, and belief.

Executed on March 10, 2006.

Madonna A. McGwin