UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAXWELL J. KIMPSON,                :
                                   :
                                   :
          Plaintiff,               :
                                   :
     v.                            :    Case No. 1:06-CV-00018 (RWR)
                                   :
FANNIE MAE CORPORATION,            :
                                   :
                                   :
          Defendant.               :

**PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO DEFENDANT'S
<u>MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT</u>**

Comes now Plaintiff, Maxwell J. Kimpson, through his attorneys THOMPSON O'DONNELL, LLP, and respectfully presents this memorandum of points and authorities in opposition to Defendant's Motion to Compel Arbitration and Dismiss the Complaint, or in the Alternative, Stay Proceedings Pending Arbitration.

<u>**INTRODUCTION**</u>

Defendant wrongfully terminated Plaintiff Maxwell Kimpson in April of 2005. Defendant terminated Mr. Kimpson in retaliation for his complaints regarding the accounting practices of Fannie Mae. Because he was wrongfully terminated, Mr. Kimpson filed a complaint with the United States Department of Labor under Public Law 107-204, Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A (hereinafter "Sarbanes-Oxley"), which was enacted on July 30, 2002.

Pursuant to 29 C.F.R. § 1980.114, if the Secretary of Labor does not issue a final decision within 180 days of the filing of the complaint then the employee may file suit in an

appropriate United States District Court. Mr. Kimpson exercised the right provided to him by 29 C.F.R. § 1980.114 by filing suit in this Court on January 6, 2006.

Defendant, while in default for failing to answer the Complaint within the time provided, comes before the Court moving to compel arbitration and dismiss the complaint. Defendant is not entitled to compel arbitration of this matter, as Mr. Kimpson never agreed to arbitrate claims related to the Sarbanes Oxley Act. Furthermore, even if Defendant were entitled to arbitration, this matter must be stayed and not dismissed.

## ARGUMENT

### I. MR. KIMPSON NEVER AGREED TO ARBITRATE CLAIMS BROUGHT UNDER SARBANES OXLEY

A motion to compel must be treated as if it were a motion for summary judgment, and not a motion to dismiss. Hughes v. CACI, Inc., 384 F.Supp.2d 89 (D.D.C. 2005). This Court is empowered to grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). It must be noted that Defendant's motion is brought at a time before the parties have had an opportunity to conduct any discovery. Even in the absence of discovery, it is clear that there are issues of material fact that make compelling arbitration improper.

When ruling on a motion for summary judgment, this Court must view the evidence in the light most favorable to the non-moving party. Bayer v. United States Dep't of Treasury, 956 F.2d 330, 333 (D.C. Cir. 1992). In this case, there are clearly issues of material fact, specifically, whether Defendant's resolution policy covers Sarbanes Oxley claims and whether Mr. Kimpson agreed to arbitrate such claims.

Arbitration is a matter of contract interpretation, and a party cannot be obligated to arbitrate a matter absent an agreement to do so. <u>Davis v. Chevy Chase Financial Ltd.</u>, 667 F.2d 160 (D.C. Cir. 1981). Parties to an arbitration agreement cannot be required to submit to arbitration any matter that they did not agree would be subject to arbitration. <u>Id</u>. An enforceable contract to submit disputes to arbitration does not exist until there is a meeting of the minds regarding all material terms. <u>Bailey v. Federal National Mortgage Association</u>, 209 F.3d 740, 341 (D.C. Cir. 2000).

The Sarbanes Oxley Act did not exist at the time Defendant enacted its dispute resolution policy. In fact, the Sarbanes Oxley Act was not enacted until 2002, more than four years after the creation of Defendant's dispute resolution policy, and two years after Mr. Kimpson began working for Defendant. Mr. Kimpson did not and could not agree to arbitrate matters regarding Sarbanes Oxley at a time when that Act did not exist. Furthermore, because Sarbanes Oxley had not been enacted when Mr. Kimpson joined Fannie Mae, there could not be a meeting of the minds regarding arbitration of Sarbanes Oxley claims.

Arbitration is a matter of consent, and it will not be imposed on parties beyond the scope of their agreement. <u>U.S. Postal Service v. National Rural Letter Carriers' Ass'n.</u>, 959 F.2d 283 (D.C. Cir. 1992). Mr. Kimpson never consented to arbitrate claims related to Sarbanes Oxley. Defendant has provided no evidence demonstrating that Mr. Kimpson consented to arbitrate claims brought under Sarbanes Oxley. Absent consent from Mr. Kimpson to arbitrate Sarbanes Oxley claims, he cannot be forced to arbitrate this case.

Defendant's dispute resolution policy states that it applies to:

> claims involving rights protected by any federal, state, or other governmental constitution, statute, ordinance, regulation, or common law. For example, claims asserting rights protected by the Fair Labor Standards Act, Title VII of the Civil Rights Act of

3

>1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Americans with Disabilities Act, 42 U.S.C. § 1981, or the Family and Medical Leave Act.

Sarbanes Oxley is not included in the extensive list of statutes contained within the policy. Defendant never amended its dispute resolution policy to include claims related to Sarbanes Oxley. Because the policy does not include the Sarbanes Oxley Act, that policy does not obligate Mr. Kimpson to arbitrate this matter.

Moreover, Defendant Fannie Mae's apparent silence with respect to including Sarbanes Oxley in its dispute resolution policy is telling. On the one hand, Mr. Kimpson and the Court could logically infer from such silence that Fannie Mae was oblivious to this significant legislation, since Mr. Kimpson's supervisors neglected to implement the requirements of Sarbanes Oxley when it was enacted. Since it appears that the very existence of Sarbanes Oxley escaped the attention of Fannie Mae, this Court cannot infer that it was to be included within the pre-existing dispute resolution policy.

Assuming, on the other hand, that this landmark legislation was a priority of Fannie Mae, its failure to revise the dispute resolution policy to include Sarbanes Oxley would be an acknowledgement that an employee should have full resort to the power of that act, just as an employee would not be precluded from filing an ERISA claim, a workers' compensation claim or other important employee right excluded from the dispute resolution policy.

Defendant's resolution policy states that "claims involving rights protected by any federal, state, or other governmental constitution, statute, ordinance, regulation, or common law" are subject to arbitration. This language is immediately narrowed by the list of statutes that the drafters intended the policy to cover. Because the broad language of the policy is

4

narrowed by the statutes listed, and that list does not include Sarbanes Oxley, the broad language of the policy does not require that this matter be arbitrated.

In fact, Defendant's dispute policy contains other restrictions that further limit the applicability of the broad language attempting to require arbitration of all claims. Defendant's dispute policy states that it,

> does not apply to any claim made in connection with workers compensation benefits, unemployment compensation benefits, or under any of Fannie Mae's employee welfare benefit, ERISA, or pension plans, or to any claim of unfair competition, disclosure of trade secrets, or breach of trust or fiduciary duty

(Dispute Resolution Policy ¶2). Not only does this limiting language further demonstrate that Defendant's policy does not cover all claims, it also demonstrates that Mr. Kimpson's claims are not covered by the policy. Mr. Kimpson's claim is that Defendant terminated him because he disclosed and complained of breaches of fiduciary duty by his supervisors. Fiduciary duty claims are explicitly excluded under the terms of the policy. Because Mr. Kimpson is making a fiduciary duty claim, his claim is not subject to arbitration.

Sarbanes Oxley "was designed to protect investors by ensuring corporate responsibility, enhancing public disclosure, and improving the quality and transparency of financial reporting and auditing. The whistleblower provisions were intended to protect employees who report fraudulent activity that can mislead innocent investors in publicly traded companies." 29 C.F.R. § 1980. The statutes cited in Defendant's resolution policy do not relate to reporting accounting improprieties or any of the other securities related issues handled by Sarbanes Oxley. Because the statutes cited in the resolution policy are entirely different from Sarbanes Oxley, agreeing to arbitrate those statutes does not constitute an agreement to arbitrate Sarbanes Oxley issues.

When enacted, Sarbanes Oxley was groundbreaking and revolutionary law unlike any prior legislation. Former Securities Exchange Commission Chairman William H. Donaldson described Sarbanes Oxley as "the most important securities legislation since the original federal securities laws of the 1930's". July 30, 2003 Speech by SEC Chairman to the National Press Club. Sarbanes Oxley creates protections and requirements unlike any other legislation. Because Sarbanes Oxley was so revolutionary and unique, neither Defendant nor Mr. Kimpson could have knowingly agreed to arbitrate matters brought under that statute before it existed. Accordingly, there was never a meeting of the minds regarding Sarbanes Oxley claims; therefore, Mr. Kimpson is not required to arbitrate this case.

As Defendant's motion acknowledges, this Court is empowered to determine whether Defendant's dispute resolution policy covers Sarbanes Oxley claims. (Motion to Compel p. 8). In making this determination, the Court must consider whether there was a meeting of the minds to arbitrate Sarbanes Oxley claims. Bailey v. Federal National Mortgage Association, 209 F.3d 740, 341 (D.C. Cir. 2000). When the Court is ruling upon whether there has been a meeting of the minds regarding arbitration of a certain issue, the Court should give to the opposing party the benefit of all reasonable doubts and inferences that may arise. Brown v. Dorsey & Whitney, LLP., 267 F.Supp.2d 61, 66-67 (D. D.C. 2003); citing, Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980). The revolutionary and unique nature of Sarbanes Oxley, and that fact that the Act did not exist at the time Mr. Kimpson joined Fannie Mae, clearly demonstrate that a meeting of the minds never occurred.

For the reasons set forth more fully above, Defendant's policy does not include Sarbanes Oxley claims. Because the policy does not include Sarbanes Oxley claims, and

6

because there was no meeting of the minds between Mr. Kimpson and Defendant to arbitrate Sarbanes Oxley claims, arbitration is not required in this matter.

## II.     **DEFENDANT IS NOT ENTITLED TO A DISMISSAL**

Even if Mr. Kimpson had agreed to arbitrate Sarbanes Oxley claims, Defendant is not entitled to a dismissal.  In fact, as Defendant acknowledges, considerations of judicial economy and avoidance of confusion and possible inconsistent results militate in favor of staying the entire action.  American Home Assur. Co. v. Vecco Concrete Const. Co., Inc. of Virginia, 629 F.2d 961 (4th Cir. 1980) (Motion to Compel p. 12).

Defendant cites three cases in support of its proposition that dismissal is proper in this case.  Each of these cases can be clearly distinguished from the facts presently at issue.  In Emeronye v. CACI Intern., Inc., 141 F.Supp.2d 82 (D.D.C. 2002);  Nelson v. Insignia/Esg., Inc., 215 F.Supp.2d 143 (D.D.C. 2002); and Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707 (4th Cir. 2001), the dispute resolution policies at issue required binding arbitration.  Unlike the policy in those cases, Defendant's policy requires non-binding arbitration.  To stay a suit while parties proceed with non-binding arbitration is far different than if the parties were proceeding with binding arbitration.  In binding arbitration, the employee has no right to bring a suit upon completion of the arbitration so there is no reason to stay the court proceeding.  When the arbitration is non-binding as it is in this case, the employee is entitled to bring suit regardless of the outcome of the arbitration.  To dismiss a suit in a non-binding arbitration case serves no purpose other than to force the employee to re-file an identical suit upon completion of arbitration.

Defendant's dispute resolution policy does not require that a suit in court be dismissed before proceeding with arbitration.  The policy demonstrates that the drafters preferred a stay of

proceedings rather than a dismissal. In paragraph 3 of the policy, it states that if an employee has a complaint pending before an administrative agency, Fannie Mae would ask that the complaint be suspended until completion of arbitration. Though the complaint at issue is before this Court rather than an administrative agency, the same expectation applies. As Defendant's own policy demonstrates, if this matter is subject to arbitration, this suit should be stayed and not dismissed.

Defendant repeatedly asserts that the Federal Arbitration Act ("FAA") governs its arbitration policy. The FAA itself directs that an action in court be stayed rather than dismissed if the underlying claim is subject to arbitration. Section 3 of the FAA broadly commands that a court must "stay the trial of the action". 9 U.S.C. § 3. Accordingly, the FAA does not provide for a dismissal, but rather only a stay of that suit.

Defendant's resolution policy provides for non-binding arbitration and allows the employee to bring suit upon completion of arbitration. Accordingly, Mr. Kimpson is entitled to bring suit before this Court regardless of the outcome of the arbitration. Furthermore, the decision rendered in that arbitration will not be binding upon this Court. Dismissal of this action will serve no purpose other than to force Mr. Kimpson to re-file an identical action at the close of the arbitration, and potentially jeopardizing his rights due to the passage of time. If arbitration is compelled, neither party would be prejudiced by simply staying this action until completion of arbitration. In the interest of judicial economy, and in light of that fact that neither party would be prejudiced, if arbitration is compelled this suit should be stayed and not dismissed.

## **CONCLUSION**

For the reasons set forth more fully above, Defendant's dispute resolution policy does not pertain to Sarbanes Oxley claims. Furthermore, Mr. Kimpson did not agree to arbitrate Sarbanes Oxley claims. Therefore, Mr. Kimpson is not required to arbitrate those claims prior to bringing suit in this Court. Moreover, if arbitration is compelled, this suit should be stayed rather then dismissed.

    Respectfully submitted,

    THOMPSON O'DONNELL, LLP

    _____
    J. Michael Hannon #352526
    Sean G. Ryan #495067
    1212 New York Avenue, N.W.
    Suite 1000
    Washington, D.C. 20005
    (202) 289-1133
    (202) 289-0275 (facsimile)

    Attorneys for Plaintiff
    Maxwell J. Kimpson

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT** was sent via electronic filing and first class mail, postage prepaid this 17th day of March, 2006 to:

Phillip T. Evans
HOLLAND & KNIGHT, LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006

Madonna A. McGwin
Associate General Counsel
FANNIE MAE CORPORATION
3900 Wisconsin Avenue, N.W.
Washington, D.C. 20016

                                                            _____
                                                            Sean G. Ryan