UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

MAXWELL J. KIMPSON, :
:
    Plaintiff, :
:
v. : Case No. 1:06-cv-00018 (RWR)
:
FANNIE MAE, :
:
    Defendant. :
:
:

---

**DEFENDANT'S REPLY MEMORANDUM TO PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS THE COMPLAINT, OR,
<u>IN THE ALTERNATIVE, STAY PROCEEDINGS PENDING ARBITRATION</u>**

Defendant Fannie Mae, by and through undersigned counsel, submits this Reply Memorandum to Plaintiff Maxwell J. Kimpson's ("Plaintiff" or "Kimpson") Opposition ("Opposition") to Fannie Mae's Motion To Compel Arbitration And Dismiss The Complaint, Or, In The Alternative, Stay Proceedings Pending Arbitration ("Motion to Compel").  For the reasons stated below and in the original Memorandum in Support of the Motion to Compel, the parties entered into a valid agreement to arbitrate Plaintiff's claim of wrongful discharge under Sarbanes-Oxley ("SOX"), including the issue of whether the claim itself is arbitrable.  Fannie Mae's Dispute Resolution Policy is a valid and enforceable arbitration agreement pursuant to the Federal Arbitration Act ("FAA"), and should be given full force and effect by this Court hrough

an n Order compelling Plaintiff to arbitrate his claims and otherwise dismissing,[1] or staying, this action in the interim.

## ARGUMENT

There are only two issues properly before this Court on Fannie Mae's Motion to Compel Arbitration. Under the FAA, the role of this Court in resolving a motion to compel arbitration is limited to determining: (1) whether a valid agreement to arbitrate exists; and, if it does, (2) whether the agreement encompasses the dispute at issue. 9 U.S.C. § 4. Plaintiff's Opposition fails to address these two fundamental issues. First, Plaintiff does not dispute, and implicitly concedes, that the arbitration agreement between the parties is valid and enforceable. Second, Plaintiff does not dispute that the parties expressly agreed to submit issues of arbitrability to the arbitrator, which is permissible under the FAA. These two undisputed facts are determinative of the issue before this Court and, pursuant to the FAA, mandate that the Court grant Fannie Mae's Motion to Compel arbitration and otherwise dismiss or stay this action pending such arbitration.[2]

### I. A Valid And Enforceable Arbitration Agreement Exists Between the Parties

Plaintiff utterly failed to offer any objection or opposition to Fannie Mae's assertion that it's Dispute Resolution Policy (the "Policy") is a valid agreement to arbitrate, and any such effort would have been futile. It is undisputed that at the time Plaintiff was offered and accepted employment with Fannie Mae, he was advised of the existence of the Policy and its binding effect on both Fannie Mae and all employees. (*See* Motion to Compel at 3). Plaintiff in no way

---

[1] Fannie Mae is not suggesting that the arbitration provision requires that Plaintiff's claims be dismissed with prejudice. The requested dismissal, if granted, would be without prejudice to Plaintiff's right to refile this action after the conclusion of the mandatory arbitration proceedings, should he so choose. Nevertheless, the Court may also choose to stay this action pending arbitration.

[2] Regardless of the standard of review applied to the Motion to Compel by the Court, it is undisputed as a matter of fact and law that the instant action is subject to the valid and enforceable mandatory arbitration agreement between the parties.

2

objected to or rejected the Policy at the inception of his employment with Fannie Mae. Accordingly, the Policy is a valid agreement to arbitrate that is binding on Plaintiff.

Plaintiff makes much of the absence of a "meeting of the minds" between Fannie Mae and him regarding whether or not his instant claim for wrongful discharge under SOX is subject to the arbitration agreement (which is addressed below), but makes no argument that this alleged failed "meeting of the minds" invalidates the agreement of arbitration generally. Thus the first of the two issues to be determined by the Court – the existence of a valid arbitration agreement - must be resolved in favor of Fannie Mae.

## II.  By Express Agreement of the Parties the Arbitrability of Plaintiff's Claim is a Matter for the Arbitrator

The second issue to be determined by the Court is whether the specific claim alleged by Plaintiff in this action, namely wrongful discharge pursuant to SOX, is arbitrable under the Policy. Although most of the Opposition is a futile attempt to convince this Court that Plaintiff's claim is not covered by the valid arbitration agreement, these efforts are misplaced. While arbitrability questions are usually for the court to decide, such questions must instead be resolved by the arbitrator where the parties "clearly and unmistakably" agree to have the arbitrator decide issues of arbitrability. *Howsam v. Dean Witter Reynolds, Inc.* 537 U.S. 79, 83 (2002) ("the *question of arbitrability*, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise" (internal quotation marks omitted; brackets in *Howsam*)). As noted in the Motion to Compel, pursuant to the express terms of the Policy, the parties have already agreed that "[t]he arbitrator will resolve all disputes over the interpretation and applicability of the Policy, *and over the arbitrability of all matters presented under it.*" (See Motion to Compel at pp. 9-10, referring to Section 16 of the Policy)(emphasis added). In light of the Policy's "clear and unmistakable" language, to the extent Plaintiff questions the arbitrability

of his claim, the arbitrator, and not this Court, must decide whether Plaintiff's claim falls within the scope of the Policy. Thus, this Court need not (and should not) make an independent determination of whether the Policy encompasses Plaintiff's claim before compelling arbitration. Hence, the second factor to be determined by the Court also must be resolved in favor of compelling arbitration.

### III. Plaintiff's Claim of Wrongful Discharge is Subject to Arbitration under the Policy

Notwithstanding Fannie Mae's entitlement to relief under its Motion to Compel on the foregoing bases, Fannie Mae is also entitled to the relief sought because Plaintiff's claim of wrongful discharge pursuant to SOX is clearly and unambiguously a covered claim under the Policy. In opposing the Motion to Compel, Plaintiff made several misstatements of fact and law regarding the arbitrability of his claim that warrant response. First, Plaintiff erroneously construes the illustrative language in the coverage provision of the Policy as exhaustive, which is contrary to the express terms and unambiguous meaning of the provision. Second, Plaintiff attempts to mask his claim for wrongful discharge as a claim for breach of fiduciary duty, which it is not. Finally, though he did not challenge the validity or enforceability of the Policy generally, Plaintiff attempts to escape enforcement of the Policy by asserting that there was no "meeting of the minds" between the parties on the arbitrability of SOX claims. None of these arguments has any merit.

#### 1. The "Broad" and Inclusive Coverage Provision of the Policy Includes Plaintiff's SOX Claim

Plaintiff concedes that the coverage provision of the Policy is "broad," but then goes on to argue that the "broad language of the policy is narrowed by the statutes listed," in the Policy, which do not include SOX. (*See* Opposition, 4-5). This argument contravenes the plain language of the coverage provision. If the language of a contract is clear and unambiguous, it

should be given its plain meaning. *See Vogel v. Tenneco Oil Co.*, 465 F.2d 563 (D.C. Cir. 1972); *see also ABB-Daimler-Benz Transp. (N. Am.), Inc. v. National R.R. Passenger Corp.*, 14 F. Supp.2d 75 (D.D.C. 1998). The provision reads in relevant part:

> "This Policy applies to all claims that an employee might make against Fannie Mae . . . involving a legally-protected right, that directly or indirectly relate to his or her employment or the termination of that employment . . . These include claims involving rights protected by any federal, state, or other governmental constitution, statute, ordinance, regulation, or common law. For example, claims asserting rights protected by the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 1981, or the Family and Medical Leave Act would be covered by the Policy."

(*See* Exhibit A to the Declaration of Alan Tanenbaum at 1)(attached to the Motion to Compel).

The language of this coverage provision is clear and unambiguous in defining the covered claims as including "claims involving rights protected by *any* federal, state, or other governmental constitution, statute, ordinance, regulation, or common law." It cannot be disputed that Plaintiff's claim arising under SOX involves a "right protected by [ ] federal . . . statute." So, Plaintiff's claim is necessarily a covered claim under this language. Plaintiff argues, however, that the final sentence of the coverage provision beginning with "[f]or example" in some way restricts the broad coverage language of the preceding sentence to only those five federal statutes expressly cited. The interpretation argued by Plaintiff not only contravenes the plain meaning of that sentence, it would result in an inconsistency in the Policy, which the parties did not intend and the Court should not impose. *See Beal Mortg., Inc. v. FDIC*, 132 F.3d 85, *reh'g denied* (D.C. Cir. 1998) (noting court reads contract to give meaning to all provisions and to render them consistent with each other).

The word "example," which precedes the illustrative list of statutes covered under the Policy, means "one representative of a group as a whole; sample – a portion, piece, or segment representative of a whole." *See* American Heritage Dictionary (Houghton Mifflin Co. 1987).

5

Thus, the plain meaning of this prefatory word is that what follows is merely illustrative or representative of a larger group. This plain meaning negates Plaintiff's assertion that this list is in any way limiting or exhaustive of the federal statutes that constitute covered claims. Other courts have held that comparable "broad" language in an arbitration agreement covers any claims relating to the employment relationship. *See e.g. Hughes v. CACI, Inc.*, 384 F. Supp.2d 89 (D.D.C. 2005) (holding unambiguous terms of an arbitration agreement that included "[a]ny controversy or claim . . . arising out of or relating to my CACI employment" clearly encompasses "all controversies related to an employee's entire employment experience").[3]

Moreover, Plaintiff's proposed reading of the coverage provision would lead to an inconsistency within the coverage provision itself, which the parties certainly did not intend, and which the Court should not permit. If only those claims arising under the five federal statutes listed in the final sentence are covered under the Policy, it would render contradictory and superfluous the prior sentence noting that claims arising under "*any* state, or other governmental constitution, statute, ordinance, regulation, or common law" are covered under the Policy. (Emphasis added). For instance, Plaintiff's reading of the Policy would require arbitration of a discrimination claim arising under Title VII, but permit litigation of a discrimination claim by the same employee relating to the same facts under the D.C. Human Rights Act. This inconsistent result certainly was not intended by the parties, is not how the Policy has been interpreted in all previous arbitrations, and should not be read into the Policy by this Court. Taken to its extreme, rather than rely on the broad language of the provision to define the scope of covered claims, Plaintiff's purported reading would require Fannie Mae to recite every "federal, state, or other governmental constitution, statute, ordinance, regulation, or common

---

[3] Fannie Mae's Policy is not as broad as the one in the CACI case: It only applies to the arbitration of employee claims (relating to employment or the termination of employment), that involve "a legally-protected right." (*See* Exhibit A to Tanenbaum Declaration at 1)(attached to the Motion to Compel).

law" that is or could be covered under the Policy by name and to continually update and amend the Policy to reflect any changes or additions to the this universe of laws. Again, such a result could not be the intent of the Parties given the clear and express "broad" language of the coverage provision, and no such intent should be read into the Policy by the Court.

If there could be any doubt as to this point, such doubt must be resolved in favor of arbitration:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate a particular grievance *should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.* Doubts should be resolved in favor of coverage.

*AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (emphasis added; internal quotation marks omitted); *see also Moses H. Cone Memorial Hosp., supra* at 24-25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

### 2. Plaintiff's Claim for Wrongful Discharge is Not Excluded by Any Provision of the Policy

Plaintiff next argues that his claim for wrongful discharge is excluded from coverage under the Policy by virtue of the exclusion of claims of "breach of trust or fiduciary duty." (*See* Opposition at 5). Plaintiff claims that his is a claim for breach of fiduciary duty. This argument both misstates Plaintiff's claim and misapprehends the nature of a breach of fiduciary duty claim. Plaintiff's one-count complaint states his claim as one for "wrongful termination in violation of [SOX]." Plaintiff's prayer for relief first requests "[b]ack pay" and then goes on to request "[d]amages to compensate [ ] for the loss of income and earning capacity." (*See* Compl. at 24 and 27). These recitations, made by Plaintiff himself, clearly acknowledge that Plaintiff's claim is a wrongful termination claim, not a claim for breach of fiduciary duty.

Additionally, the underlying facts and circumstances alleged in Plaintiff's Complaint do not comport with a cause of action for breach of fiduciary duty. A claim for breach of fiduciary duty requires proof that the defendant owed the plaintiff a duty of trust, which the defendant breached. *See Myers v. Finkle*, 950 F.2d 165 (4th Cir. 1991). There are no allegations in Plaintiff's Complaint that even come close to pleading either of these elements of a breach of fiduciary duty claim. Plaintiff's attempt to exempt his wrongful termination claim from arbitration by framing it, purely for motion purposes, as an entirely different legal claim is illusory at best.

### 3. Plaintiff's "Meeting of the Minds" Defense to the Arbitrability of this Action Must Fail Because It is Without Basis

Plaintiff attempts to avoid enforcement of the valid arbitration agreement between the parties with a poorly concocted argument that his SOX claim is not arbitrable because there was no "meeting of the minds" between the parties as to whether SOX claims specifically are covered under the Policy. (*See* Opposition at 6). The argument that there was no "meeting of the minds" is a defense to contract formation, but Plaintiff argues nowhere in his Opposition that the Policy is invalid.[4] Rather, Plaintiff implicitly concedes the Policy is valid and enforceable; he merely argues that his SOX claim is not arbitrable.[5] Whether or not the claim is covered is a matter of contract interpretation; and, as noted in Section III.1, above, Plaintiff's SOX claim falls squarely

---

[4] Plaintiff's citation to *Bailey v. Federal Nat'l Mortgage Ass'n*, 209 F.3d 740 (D.C. Cir. 2000) and *Brown v. Dorsey & Whitney*, LLP., 267 F. Supp.2d 61 (D.D.C. 2003) are inapposite. Both *Bailey* and *Brown* involved plaintiffs who challenged the validity of the arbitration policy itself, not its meaning, on the grounds that there was no "meeting of the minds" between the parties at contract formation. See *Bailey*, 209 F.3d. 740 (noting "[t]he problem here is complicated . . . because this is not a case in which the parties disagree over the meaning of an existing agreement. Rather, the legal battle here is over the existence of a contract, not its meaning"); *Brown*, 267 F. Supp.2d 61 (noting "plaintiff does not merely argue that the dispute resolution policy contained in the Employment Agreement she signed is unenforceable but she argues that the Employment Agreement as a whole is invalid and unenforceable").

[5] Although it does not even merit a serious response, without legal basis Plaintiff also implies that SOX, due to its very nature and the timing of its enactment, is self-excluding, somehow trumping the clear language of the Policy. The concept runs contrary to the entire body of contract law and cannot be considered.

8

within the coverage of the Policy. Accordingly, his argument that there was no "meeting of the minds" between the parties is without merit.

## CONCLUSION

Plaintiff has failed to raise any genuine issue of fact or law in opposing Fannie Mae's Motion to Compel, and Fannie Mae's Motion to Compel should be granted. Plaintiff does not dispute the validity or enforceability of the Policy. To the extent there is any viable dispute about the arbitrability of Plaintiff's claim under the Policy, that issue is expressly reserved for the Arbitrator. Although, by agreement of the parties, this Court may not decide the issue of arbitrability, Fannie Mae notes that it is indisputable that Plaintiff contractually agreed to arbitrate *all* claims involving "a legally-protected right," relating to his employment with Fannie Mae arising under *any* federal statute. Plaintiff's wrongful discharge claim pursuant to SOX is a covered claim under the plain meaning of the Policy language. Accordingly, pursuant to Sections 2, 3, and 4 of the FAA (9 U.S.C. §§ 2, 3, & 4), Fannie Mae respectfully submits that this Court should either dismiss or stay this action, and issue an order compelling Plaintiff to submit his claim to arbitration.

Dated:  March 24, 2006                                  Respectfully submitted,

By:   \_\_\_\_\_/s/  Philip T. Evans_____
 Philip T. Evans (D.C. Bar No. 441735)
 HOLLAND & KNIGHT LLP
 2099 Pennsylvania Ave., N.W., Suite 100
 Washington, D.C.  20006
 Tel: (202) 955-3000/Fax: (202) 955-5564

*Counsel for Fannie Mae*

*Of Counsel:*

Madonna A. McGwin
Associate General Counsel
Fannie Mae
3900 Wisconsin Avenue, N.W.
Washington, D.C.   20016-2892

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 24th day of March, 2006, he caused a copy of the foregoing Reply to Defendant's Opposition to Defendant's Motion to Dismiss The Complaint, or, In The Alternative, Stay Proceedings Pending Arbitration to be served by electronic means on:

J. Michael Hannon
Thompson, O'Donnell LLP
1212 New York Avenue, NW
Suite 1000
Washington, D.C. 20005

                                                /s/ Philip T. Evans
                                                Philip T. Evans

# 3678273_v1