UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAXWELL J. KIMPSON, : | |
| Plaintiff, : | |
| v. : | Civil Action No. 1:06-cv-00018 (RWR) |
| FANNIE MAE, : | |
| Defendant. : | |

**DEFENDANT FANNIE MAE'S REPLY TO PLAINTIFF'S**
**OPPOSITION TO MOTION TO VACATE DEFAULT**

Defendant Fannie Mae ("Fannie Mae"), by and through undersigned counsel, submits this Reply to Plaintiff Maxwell Kimpson's Opposition ("Opposition") to Fannie Mae's Motion to Vacate Default ("Motion to Vacate"). For the reasons discussed below, and as set out more fully in Fannie Mae's Consolidated Motion to Vacate Default and Opposition to Plaintiff's Renewed Motion for Default Judgment, good cause exists to vacate the Default entered by the Clerk against Fannie Mae on March 3, 2006, and to allow this dispute to proceed to a resolution on the merits.

**INTRODUCTION AND FACTUAL BACKGROUND**

There is relatively little dispute concerning the facts germane to the Motion to Vacate. Plaintiff Maxwell Kimpson ("Plaintiff" or "Kimpson") is a former at-will employee of Fannie Mae. Fannie Mae hired Kimpson on August 28, 2000. In or about early 2003, Kimpson began to have difficulties performing his job. After giving him almost two years of coaching and performance feedback, Kimpson's performance continued to be unsatisfactory. As a result of his

ongoing performance issues, Fannie Mae terminated its employment relationship with Kimpson on April 6, 2005.

In or about early July 2005, in accordance with the procedures set forth in the Sarbanes-Oxley Act of 2002 ("SOX"), Kimpson filed a complaint with the Department of Labor, Occupational Safety and Health Administration, asserting that Fannie Mae violated SOX by wrongfully terminating him in retaliation for informing his supervisors about accounting improprieties at Fannie Mae. Fannie Mae denied Plaintiff's allegations and cooperated fully in the investigation. In December 2005, prior to filing this lawsuit, counsel for Kimpson filed a notice with the Department of Labor, with service made to Fannie Mae, indicating Kimpson's intent to file suit in United States District Court because, as required under SOX, the Secretary of Labor would not be able to issue a final decision within 180 days of Plaintiff's filing of the administrative complaint.

Shortly after receiving a copy of the notice wherein Kimpson indicated his intent to file suit without waiting for the Department of Labor to issue its findings, in-house counsel for Fannie Mae ("Ms. McGwin"), initiated contact with counsel for Kimpson, advising them of Kimpson's obligation to arbitrate any dispute arising from his employment at Fannie Mae.[1] In January 2006 (after the time had expired for the Department of Labor to issue a final decision), counsel for Plaintiff called Ms. McGwin to inquire about service of a complaint. Again, Ms. McGwin advised them of Kimpson's obligation to arbitrate any dispute arising from his employment at Fannie Mae. As a follow-up to that conversation, the next day Ms. McGwin sent an e-mail to Plaintiff's counsel reiterating Kimpson's obligation to first proceed to arbitration. Ms. McGwin also provided specific information as to Fannie Mae's agents for service of process.

---

[1] Much of the facts discussed herein are set forth in the Declaration of Madonna A. McGwin, which can be found as an attachment to Fannie Mae's Consolidated Motion to Vacate Default and Opposition to Plaintiff's Renewed Motion for Default Judgment.

Plaintiff filed this action on January 6, 2006, and the Summons and Complaint apparently were served on Fannie Mae by certified mail addressed to Jodie Kelley, Esq., Vice-President and General Counsel, Fannie Mae ("Ms. Kelley"), on January 20, 2006. As such, Fannie Mae's time to Answer or otherwise respond to Plaintiff's Complaint would have been on or before February 9, 2006.

Following her communications with Plaintiff's counsel, Ms. McGwin had several communications with Ms. Kelley in January and February concerning the anticipated arrival of a Summons and Complaint from Plaintiff's counsel. Ms. Kelley continually indicated to Ms. McGwin that she had not received any correspondence or pleadings concerning Plaintiff, until February 24, 2006, when Ms. Kelley received a copy of Plaintiff's Motion for Default Judgment. After review of the Motion for Default Judgment and the attached exhibits, Ms. McGwin and Ms. Kelley were able to locate a copy of the Summons and Complaint, but could not locate the envelope in which that pleading may have been delivered to Fannie Mae.

Without first determining whether service had been properly made, Ms. McGwin immediately contacted counsel for Plaintiff and offered to accept service if Plaintiff would withdraw the Motion for Default Judgment and allow Fannie Mae additional time to file an Answer or otherwise respond to Plaintiff's Complaint. Plaintiff's counsel denied the request. Ms. McGwin then engaged the law firm of Holland & Knight, and on Wednesday, March 1, 2006, undersigned counsel promptly filed a Motion for Enlargement of Time in which to Answer or otherwise respond to Plaintiff's Complaint and, two days later, on March 3, 2006, filed a Motion to Dismiss and Compel Arbitration. Notwithstanding the pending Motion for Enlargement, on March 3, 2006, the Clerk entered a Default against Fannie Mae. On March 10,

2006, Fannie Mae filed its Motion to Vacate Default, which is currently pending before this Court.

**ARGUMENT**

There are two key legal principals to be determined by the Court in considering Fannie Mae's Motion to Vacate. The first principal, which Plaintiff wholly fails to address in his Opposition, is the clear policy of the courts in this Circuit that disputes are to be resolved by a trial on the merits, and not by the disfavored remedy of default. Kliegel v. Key West & Caribbean Trading Company, 627 F.2d. 372, 373-4 (D.C. Cir. 1980); Jackson v. Beech, 636 F.2d. 831, 836 (D.C. Cir. 1980); Baade v. Price, 175 F.R.D. 403, 405-6 (D.D.C. 1997); Biton v. Palestine Interim Self Government Authority, 233 F.Supp. 2d. 31, 33-4 (D.D.C. 2002); Capital Yacht Club v. Vessel Aviva, 228 F.R.D. 389, 393-4 (D.D.C. 2005); Flynn v. Pulaski Construction Co., Inc., 2006 WL 47304 (D.D.C. 2006).

The second principal, which Plaintiff's Opposition does acknowledge, is the three part test used to evaluate whether "good cause" exists under Fed.R.Civ.P. 55(c) to vacate an entry of default. One, was the default willful. Two, is the plaintiff prejudiced if the default is set aside. Three, does the defendant have a meritorious defense to plaintiff's claims. Kliegel v. Key West & Caribbean Trading Company, 627 F.2d. at 373-4; Jackson v. Beech, 636 F.2d. at 836; Baade v. Price, 175 F.R.D. at 405-6. Further, all doubts are to be resolved in favor of the moving party, in furtherance of the strong federal policy which favors resolving disputes on the merits. Biton v. Palestine Interim Self Government Authority, 233 F.Supp. 2d. at 33-4, citing Jackson v. Beech, 636 F.2d at 836.

As to the first element, Fannie Mae's conduct can not be described as "willful." Aware that a suit might be filed, Ms. McGwin initiated contact with Kimpson's counsel to inform them

4

of Kimpson's obligation to proceed to arbitration as a prerequisite to any lawsuit, and, later, in response to counsel's inquiry, identified Ms. Kelley as an authorized agent for service of process of any demand or suit made against Fannie Mae. Ms. McGwin informed Ms. Kelley about the anticipated service of a Complaint, and continually followed up with Ms. Kelley about the Kimpson dispute and service of any papers related thereto. Once Ms. McGwin and Ms. Kelley determined, on February 24, 2006, that the Summons and Complaint had arrived at Fannie Mae (after receiving Plaintiff's Motion for Default Judgment), Fannie Mae moved expeditiously to address the matter by contacting Plaintiff's counsel, by contacting the Clerk of the Court and, eventually, retaining outside counsel to file the appropriate pleadings.[2]

Fannie Mae's conduct in this case does not rise to the level of willfulness necessary to sustain a default under Fed.R.Civ.P. 55(c). See International Painters and Allied Trades Union and Industry Pension Fund v. H.W. Ellis, 288 F.Supp. 2d 22, 26 (D.D.C. 2003)("boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable"). Fannie Mae's failure to respond was not, as Plaintiff's Opposition suggests, deliberate. While Ms. McGwin has been advised of Kimpson's intent to file a lawsuit (and was expecting service of a Complaint), she also hoped, based on her communications with his counsel, that Kimpson would honor his obligation to file a demand for arbitration before proceeding with the lawsuit.

---

[2] Plaintiff takes issue with the fact that Fannie Mae simply states that the Summons and Complaint were found in the Fannie Mae law department as "proof" that Fannie Mae's failure to respond to Summons and Complaint was "willful." Opposition at pp. 5-6. While Fannie Mae acknowledges that the Fannie Mae main mailroom received a package on January 20, 2006 (as evidenced by the return receipt provided by Plaintiff), and that the Summons and Complaint were found by Ms. Kelley on February 24, 2006, Fannie Mae has been unable to determine when the Complaint and Summons was delivered to the mail room for Fannie Mae's law department. However, since service was, under SCR-Civil 4(c)(3), effective when signed for by the Fannie Mae employee in the main Fannie Mae mailroom on January 20, 2006, Fannie Mae does not believe this is a factual issue that requires resolution to decide the Motion to Vacate.

The fact that Fannie Mae did not timely respond to the Complaint was due entirely to an administrative oversight within Fannie Mae.  As soon as Ms. McGwin received notice that the action had, in fact, been served on Fannie Mae, she moved as expeditiously as possible to respond to the Complaint.  Fannie Mae's conduct was one of omission, not commission, as Fannie Mae law department personnel did not know that Plaintiff had, in fact, filed his Complaint and caused it to be served on Fannie Mae.  This clearly weighs against a finding of willfulness.  Compare Flynn v. Pulaski, 2006 WL 47304 at *8 (willfulness can be established when a defendant fails to respond in light of a demand or warning by Plaintiff's counsel as to the entry of default) with Accu-Weather, Inc. v. Reuters Ltd., 779 F.Supp. 801, 804 (M.D.Pa. 1991)(oversight by counsel in failing to file answer does not constitute culpable or willful conduct justifying entry of default and default judgment).

As to the second prong, Fannie Mae has established a *bona fide* defense to the claims asserted by Plaintiff.  Contrary to the claim in his Opposition that Fannie Mae terminated Kimpson's employment in retaliation for making protected statements (Opposition at pp. 6-7), Kimpson was terminated for poor performance.  See Verified Answer at Seventh Affirmative Defense.  Moreover, Fannie Mae has also denied most of the factual allegations made in Plaintiff's Complaint because the allegations are simply inaccurate.  A factual dispute is not proper for resolution at this stage of the proceeding.[3]  Fannie Mae's repudiation of the factual allegations in Plaintiff's Complaint is buttressed by the fact that the same issues raised in Plaintiff's Complaint were extensively investigated by an investigator for the U.S. Department of Labor (charged with the authority to conduct such investigations) and such investigator recommended that the administrative complaint filed by Plaintiff be dismissed.  Fannie Mae has

---

[3] Kliegel v. Key West & Caribbean Trading Company, 627 F.2d. at 374;  Biton v. Palestine Interim Self Government Authority, 233 F.Supp. 2d. at 33 (cases holding that court is not supposed to evaluate strength or validity of defenses asserted in response to a default, but whether a colorable defense has been asserted).

further asserted, among others, the affirmative defenses of failure to arbitrate, breach of contract, waiver, estoppel, and failure to state a claim upon which relief can be granted. These defenses are supported either by Fannie Mae's position that there is no merit to Kimpson's claim that his termination was in retaliation for protected speech, or Fannie Mae's position that Kimpson's claims must be arbitrated in accordance with the terms of his employment.

Finally, applying the third prong of the test, Plaintiff's Opposition fails to demonstrate any prejudice by the relief sought by the Motion to Vacate. Any delay created by Fannie Mae's failure to answer or otherwise respond by mid-February will not adversely affect Plaintiff's ability to fairly prosecute his claims, nor his ability to take discovery. A slight delay, by itself, does not establish prejudice. Capital Yacht Club v. Vessel Aviva, 228 F.R.D. at 393-4; Corso v. First Frontier Holdings, Inc., 205 F.R.D. 420, 421 (S.D.N.Y. 2001), citing Enron Oil Corp. v. Diakuhara, 10 F.3rd 90, 95-56 (2nd Cir. 1993)(also noting the Second Circuit's preference for resolution of disputes on the merits).

## CONCLUSION

For the reasons discussed above, Fannie Mae respectfully requests that this Court vacate the Default entered by the Clerk and allow this matter to proceed.

Dated: March 31, 2006                    Respectfully submitted,


By:      /s/ Philip T. Evans
Philip T. Evans (D.C. Bar No. 441735)
HOLLAND & KNIGHT LLP
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006
Tel: (202) 955-3000/Fax: (202) 955-5564

*Counsel for Fannie Mae*

*Of Counsel:*
Madonna A. McGwin
Associate General Counsel
Fannie Mae
3900 Wisconsin Avenue, N.W.
Washington, D.C.   20016-2892

**CERTIFICATE OF SERVICE**

      The undersigned certifies that on the 31st day of March, 2006, he caused a copy of the foregoing Reply to Plaintiff's Opposition to Fannie Mae's Motion to Vacate Default to be served by electronic means on:

J. Michael Hannon
Thompson, O'Donnell LLP
1212 New York Avenue, NW
Suite 1000
Washington, D.C. 20005

                                        ___/s/_ Philip T. Evans_____
                                        Philip T. Evans

# 3686429_v1